**W. Sale LEWIS, Savings and Loan Commissioner of Texas et al., Appellants,**

v.

**COLORADO COUNTY FEDERAL SAVINGS AND LOAN ASSOCIATION et al., Appellees.**

No. 11760.

Court of Civil Appeals of Texas, Austin.

May 27, 1970.

Rehearing Denied June 24, 1970.

Second Rehearing Denied July 15, 1970.

Crawford C. Martin, Atty. Gen., Ray McGregor, Asst. Atty. Gen., Austin, Moorman & Tate, Brenham, Jacobsen & Long, Joe R. Long, Gary Evatt, Austin, for appellants.

McKay & Avery, John J. McKay, Austin, for appellees.

HUGHES, Justice.

This appeal is by W. Sale Lewis, Savings and Loan Commissioner of Texas and South Central Savings Association of Brenham, Texas, from a judgment decreeing an order of the Commissioner entered April 4, 1969, granting South Central authority to establish a savings and loan facility denominated an "agency" at La Grange in Fayette County, Texas, to be null and void, of no force and effect and permanently enjoining the Commissioner and South Central from acting under or pursuant thereto.

This judgment was obtained through the suit of Colorado County Federal Savings and Loan Association, Smithville Federal Savings and Loan Association and the First National Bank of La Grange, who are appellees.[1]

Appellants' first three points, jointly briefed, are, in substance, that the Trial Court erred in holding, by implication, that Sections 3.1, 3.2 and 3.3 of the Rules and Regulations for savings and loan associations are invalid or unconstitutional, and in holding, by implication, that in considering and acting upon an application for an "agency" the Commissioner must apply the same standards which are applicable to an application for a character or a branch office.

---

1. For a related case see unpublished opinion rendered in our causes 11,508 and 11,510, Gerst v. South Central Savings & Loan Association, 4–19–67, writ ref., n. r. e.

Appellees in their first and second counterpoints assert that insofar as the public interest is concerned a "branch" and a "savings and loan agency" are so comparable in nature and services available to the public that they must be treated and tested by the same statutory standards, the rules and regulations of the Commissioner to the contrary notwithstanding, and that the order of the Commissioner is void because of its failure to make affirmative findings prescribed by the properly applicable statutes and rules and regulations.

We overrule appellants' first three points and sustain appellees' first two counterpoints to the extent indicated herein.

The Rules and Regulations for Savings and Loan Associations under which the Commissioner acted herein and some of the statutes and other rules controlling our decision, in their pertinent parts, are set forth in footnote two.[2]

2. Rules 2.2, 2.4 (in part), 2.5 and 2.6:
"2.2. The Commissioner may authorize by his approval the establishment and maintenance of the following types of additional offices by an association:
(a) branch offices at which the association, through its regularly employed personnel, may transact any business that could be done in the home office;
(b) loan offices at which the association, through its regularly employed personnel, may receive and process applications for loans and contracts and manage or sell real estate owned by the association but at which no other business of the association is carried on.
2.4. The Commissioner shall approve an application for a branch office if he shall have affirmatively found from the data furnished with the application, the evidence adduced at the hearing and his official records that: * * * (f) the proposed location of the additional office is within the same county as the principal or home office of the applying association except in cases where it appears that the proposed additional office is to be in a different county from that in which the principal or home office of the applying association is located and there is no other association, either State or Federal, adequately serving the community in which such additional office is to be located;
   *       *       *       *       *
2.5. Each application for permission to establish a loan office shall state the proposed location thereof; the need therefor; the personnel and office facilities to be provided and the estimated expense of such office and shall be accompanied by a proposed annual budget of the applying association. Upon receipt of such an application the Commissioner shall notify by letter all associations and Federal associations in the county where the proposed office is to be located, stating the substance of the proposed application and requesting the associations so notified to file with him, in writing, any objections they might have to such proposal within fifteen (15) days after the date of such notice.
2.6. The application to establish and maintain such loan office shall be approved without a public hearing if the Commissioner shall affirmatively find from data furnished with the application, his official records, and any other evidence presented to him that:
(a) the applying association has had no serious supervisory problems which would affect its ability to properly operate such office;
(b) the applying association will have adequate income to support the proposed operation;
(c) a separate enclosed office area will be provided (such enclosure may be by counters or railings of less than ceiling height)."
Rules 3.1, 3.2:
"3.1. An association may, without approval of the Commissioner, appoint an agent or agents, whose functions shall be limited to the receipt of applications for loans, the servicing of loans and contracts, or to the management or sale of real estate owned by the association, provided such agent is a 'mortgagee' qualified and approved by the Federal Housing Administration. In addition, an association may appoint other persons as agent to perform such limited functions provided the proposed agent meets the qualification set forth in 1.11 hereof and the Commissioner approves the proposed agent as to character, responsibility and general fitness to conduct such business for the association and the contractual arrangement between the association and the agent. 'Agency' means any lawful arrangement whereby any business of an association is conducted other than by regularly employed personnel of the association. An agent appointed under the authority of this section shall not receive payments on new or established savings ac-

The Commissioner, in his order which is attacked here, made these relevant findings:

"Be it remembered that on the 6th day of November, 1968, an application was set for hearing concerning an application for an authorized agency to be operated by the South Central Savings Association, Brenham, Texas, in accordance with and under the laws of the State of Texas and the Rules and Regulations for Savings and Loan Associations, at 133 N. Jefferson Street, La Grange, Fayette County, Texas, * * *

This application is for permission to appoint Mr. Milton J. Pechal of La Grange, Fayette County, Texas, as an agent of South Central Savings Association, Brenham, Texas, for receiving savings for and on behalf of the Association, including applications for new accounts, in addition to performing the

counts or pay out withdrawals of monies from savings accounts, nor shall he perform any duties for the association other than those specifically authorized herein. The restrictions placed on the authority of an agent by this section will not prohibit the board of directors of an association from otherwise appointing and designating such agent as an appraiser for the association.

3.2. Agencies for receiving savings for and on behalf of an association, including applications for new accounts, in addition to performing the functions allowed in 3.1 above may be established with the prior approval of the Commissioner upon a finding that:

(a) the character, responsibility and general fitness of the proposed agent are such as to command confidence and warrant belief that the business of the association to be conducted by such agent will be honestly and efficiently handled; and

(b) the proposed operation will not unduly harm any other association operating in the vicinity of the proposed location; and

(c) the procedure to be followed in regard to the safeguarding of funds belonging to the applying association is adequate.

3.3. Applications for permission to establish the type agencies described in 3.2 shall state the proposed location there-

functions authorized by Section 3.1 of the Regulations for Savings and Loan Associations * * * That the character, responsibility and general fitness of the proposed agent are such as to command confidence and warrant belief that the business of association to be conducted by such agent will be honestly and efficiently handled. * * *

The Commissioner further finds that the proposed operation will not unduly harm any other association operating in the vicinity of the proposed agency. It was established at the hearing that there are no associations either state or federal with home or branch offices, in Fayette County. The nearest association is in Smithville, Texas, approximately 20 miles from La Grange and the other opposing Association, Colorado County Federal Savings and Loan, is located in Columbus, Texas, some 26 miles from the proposed agency.

of; the need therefor; the functions to be performed; the personnel and facilities to be provided; and such other information as to clearly show the nature of the proposed operation; * * * "

Sec. 2.08 of the Texas Savings and Loan Act, Art. 852a, Vernon's Ann.Tex. Civ.St., provides, in part:

"2.08. *Approval of Application for Charter.*

The Commissioner shall not approve any charter application unless he shall have affirmatively found from the data furnished with the application, the evidence adduced at such hearing and his official records that: * * *

(2) the character, responsibility and general fitness of the persons named in the Articles of incorporation are such as to command confidence and warrant belief that the business of the proposed association will be honestly and efficiently conducted in accordance with the intent and purpose of this Act and that the proposed association will have qualified full-time management;

(3) there is a public need for the proposed association and the volume of business in the community in which the proposed association will conduct its business is such as to indicate profitable operation;

(4) the operation of the proposed association will not unduly harm any existing association."

The protestants in this hearing are healthy well managed institutions and the establishment of an agency in La Grange will not materially affect their growth pattern.

There presently exists a need for a savings and loan agency in La Grange, Fayette County, Texas, to serve the community. South Central Savings Association has 564 customers and has acquired over $2,000,000.00 in savings from the Fayette County area. This agency will provide a range of services to the public that has hitherto not been available to Fayette County residents."

There were other general findings as well as findings as to minor matters. The authority sought by South Central was granted and approved.

In Southwestern Savings and Loan Association v. Falkner, 160 Tex. 417, 331 S.W. 2d 917 (1960), it was held that the same basic standards prescribed for the granting of a charter for a savings and loan association are required for the establishment of a branch office. In its opinion, the Court used this language:

"It is undoubtedly the purpose of Article 881a–2 to protect against the evils of excessively zealous competition through control of the number of building and loan associations in a specified area. That purpose can be completely frustrated if branch offices can be opened without the approval of the Commissioner at any place selected by the directors of an existing association. Having been denied a charter to operate in area A but granted a charter to operate in area B, an association could then establish a branch office in area A and thus by indirection secure rights and privileges which had been denied to it on the statutory ground that the establishment of the office was inimical to the public interest."

(Art. 881a–2, now repealed, prescribed the requirements for a charter for Building and Loan Associations which are similar to the requirements of Sec. 2.08, Art. 852a).

We believe the same logic and reasoning used by the Court in Southwestern is applicable here. It is true that in Southwestern no rules were extant for the authorization of a branch while here there are rules for granting authority to establish a "savings and loan agency." These rules, in our judgment, are more lenient than the statutes and rules applicable to the grant of charters and branches for savings and loan associations. In two particulars, at least we find such departures to be material and legally unacceptable, towit: (a) the failure to require a "public need" [3] for the facility and (b) the failure to require compliance with Rule 2.4(f).

Appellants point out these differences between the operations of a savings and loan agency and a branch, as reflected by the testimony of Gordon Parker, president of South Central, and Dr. Francis Scott Yeager, a research economist, a witness for South Central:

(1) At a branch office the association conducts business "through its regular employed personnel" while at an agency business is transacted for and on behalf of the association by an "agent."

(2) The association may "transact any business that could be done in the home office" at the branch office while the savings and the loan functions of an agency are limited in the following respects:

(a) An agency cannot lend funds directly or approve loan applications. (See in this regard Rule 8.7, infra.)

(b) Savings deposits cannot be recorded and receipted in the customer's passbook on the spot. At the proposed agency of South Central the agent will accept the customer's savings deposit and passbook, issue

---

3. For definition of "public need" see Gerst v. Nixon, 411 S.W.2d 350, Tex.Sup. (1967).

a receipt for the deposit, and mail the passbook and a copy of the receipt to the home office. At the home office the deposit will be posted and receipted, both in the association's records and in the customer's passbook, and the passbook will be mailed directly to the customer.

(c) A savings customer cannot make withdrawals from the agency. From a savings standpoint, this is characterized by appellants as perhaps the most important difference between a branch office and an agency arrangement.

On the other hand appellees stress the similarities between the authority of a branch and a savings and loan agency.

It is shown that the agency, if authorized, would have its own separate office building.

Rule 8.7 of the rules for regulating savings and loan associations provides, in part:

"Loans originating in branch offices, loan offices or agencies shall be approved in the same manner as loans originating at the principal offices."

Savings must be withdrawn pursuant to the provisions of Art. 852a, Sec. 6.15, V.T.C.S., which reads, in part:

"Any savings account holder may at any time present a written application for withdrawal of all or any part of his savings account except to the extent the same may be pledged to the association * * *."

Also, all savings accounts must be transferred in accordance with the provisions of Sec. 6.05 of the same article, which reads, in part:

"Savings accounts shall be transferable only on the books of the association upon presentation of evidence of transfer satisfactory to the association accompanied by proper application for transfer * * *."

Sec. 8.02 of Art. 852a provides:

"* * * Records of business transacted at any branch or agency office may be kept at such branch or agency office; provided, that control records of all business transacted at any branch or agency office shall be kept at the home office."

The principal business of a savings and loan association is to accumulate and lend money for profit. When all the provisions of the rules and statutes are considered it is evident that a savings and loan agency, such as South Central seeks, would have authority to engage in the principal business of a savings and loan association or its branch. It would have authority to solicit, advertise for and process and service loans, receive and process savings, receive and forward requests for savings withdrawals and service new accounts. It would also be authorized to manage the association's investments.

The fact that this facility would be called an agency rather than a branch and that it would operate under a special contract relates more to internal management rather than to the nature and scope of the business done.

The other differences between a branch and a savings and loan agency are purely incidental to the main business of the association and are functional in nature. They reflect only different methods of doing the same thing, i. e. the accumulation of and lending money for profit.

Savings and loan associations are affected by a public interest. It is for this reason that they are regulated.[4] Completely unregulated associations could accumulate and lend money, as was once the case, but the public would not be protected in the process.

Since the paramount objectives of branches of savings and loan associations and savings and loan agencies are the same, we are of the opinion that public policy

4. Gerst v. Cain, 388 S.W.2d 168 (Tex.Sup.1965).

requires that they be regulated by the same basic standards in order that runaway competition will not result to the detriment of other like businesses and the public at large.

 Specifically, we hold that since the Commissioner has not found that there is a public need for the savings and loan agency sought by South Central and has not made the findings required by Rule 2.4(f), the Trial Court correctly set aside the grant of authority to South Central. To this extent, the rules for savings and loan agencies are supplemented and conflicting rules are invalidated. See Gerst v. Jefferson County Savings and Loan Association, 390 S.W.2d 318, Tex.Civ.App., Austin, writ ref., n. r. e. (1965).

In view of this holding, other points made by appellants need not be determined.

The judgment of the Trial Court is affirmed.

Affirmed.

## ON MOTION FOR REHEARING

 Appellants call attention to their eighth point which was not discussed in our original opinion. This point is that the Trial Court should not have enjoined appellants from acting under the order which it had vacated. Appellants cite Sec. 11.12(6) Art. 852a, V.T.C.S., which provides, in part, that "the reviewing court may affirm the action complained of or remand the matter to the Commissioner for further proceedings." and Gerst v. Jefferson County Savings and Loan Association, 390 S.W.2d 318, Tex.Civ.App., Austin, writ ref. n. r. e. (1965), sustaining the validity of this provision.

We sustain this point and to such extent the motion for rehearing is granted.

There is no need for an injunction when it is not shown that any threat has been made to implement the order which has been set aside. See Railroad Commission v. Debardeleben, 297 S.W.2d 203, Tex.Civ.

App., Austin, Affirmed 157 Tex. 518, 305 S.W.2d 141 (1957).

We modify the judgment below by deleting the provisions granting an injunction and by providing that this proceeding be remanded to the Commissioner for further proceedings consistent with this opinion. The motion for rehearing is in all other respects overruled.

Granted in part and in part overruled.