**W. Sale LEWIS, Savings and Loan Commissioner of Texas et al., Appellants,**

v.

**PEOPLES SAVINGS AND LOAN ASSOCIATION et al., Appellees.**

**No. 11786.**

Court of Civil Appeals of Texas, Austin.

Jan. 27, 1971.

Rehearing Denied Feb. 17, 1971.

Crawford C. Martin, Atty. Gen., Philip G. Warner, Asst. Atty. Gen., Jacobsen & Long, Joe R. Long, Gary Evatt, Austin, for appellants.

Small, Herring, Craig & Werkenthin, Fred B. Werkenthin, Clark, Thomas, Harris, Denius & Winters, Conrad Werkenthin, Mary Joe Carroll, Austin, for appellees.

PHILLIPS, Chief Justice.

Appellant Community Savings and Loan Association of Fredericksburg filed an application for the use of a mobile facility or trailer to be transported at various times

to Mason, Mason County; Bandera, Bandera County; Kingsland, Llano County; Junction, Kimble County; and Burnet, Burnet County. All of these towns are in Texas.

Appellees, with established, chartered institutions serving the abovementioned towns appeared as protestants at the hearing for the applications. It is generally agreed that the mobile facility was to perform essentially the same functions for the public as does a permanent branch office.

The Savings and Loan Commissioner approved the Appellant's application for the abovementioned mobile service; consequently, the suit was brought by the banks and savings and loan associations operating in the affected area seeking to have the order of the Commissioner set aside.

The trial court granted Appellees' motion for summary judgment holding the herein-after described sections of the Rules and Regulations for Savings and Loan Associations invalid.

We affirm.

Appellants are before us with ten points of error; however, inasmuch as our overruling of his first point disposes of the case, we need not consider the remaining points.

Appellants' first point, which we overrule, is the error of the trial court in holding that Section 2.8 of the Rules and Regulations for Savings and Loan Associations is invalid as written.

The two sections of Rules 2.8 [1] which are the focal points of this decision are (h) and (m), read:

"(h) An application for a mobile facility shall be filed with the Commissioner in

1. "2.8. In order to obtain permission to establish a mobile facility the following procedures and conditions shall apply:
   (a) Prior to the establishment and operation of such facility the association shall obtain approval of the Commissioner for permission to do so;
   (b) Such facility shall be operated only at locations approved by the Commissioner, each of which shall at all times be appropriately identified at the site and on the facility, within one hundred (100) miles of the association's home office;
   (c) The mobile facility shall be established and operated at two or more locations, each of which at the time of filing of the application shall be more than ten (10) miles from the locations of any home or branch office of any other savings and loan association;
   (d) Any such facility shall be open for business at the same location on the same day or days of each week (established holidays excepted) but shall not be consecutive days, during such hours aggregating a total of not less than four hours a day as the associations' board of directors may from time to time determine;
   (e) The mobile equipment used in the establishment and operation of such facility shall not remain at the site except for business hours approved by the association; further, that each applicant

shall show that adequate safeguards for the security protection of such mobile facility and its contents will exist. And the Commissioner may require further safeguards if in his opinion the proposed safeguards be inadequate;
   (f) Operation of such facility shall not be conducted at any location after the expiration of such period of time as the Commissioner shall prescribe which shall not exceed three (3) years except with subsequent approval of the Commissioner;
   (g) Deleted; (effective 8/4/69.)
   (h) An application for mobile facility shall be filed with the Commissioner in the same manner as required for a branch office with such supporting data that is pertinent to the application. Such application and supporting data shall be sworn to as prescribed in Section 2.01 of the Texas Savings and Loan Act. However it is not intended that the general rules applying to branches and charters as to public need, undue harm and profitability need be established;
   (i) No application for permission to establish a mobile facility shall be approved if, in the opinion of the Commissioner, the policies and condition of operations of the applicant association afford a basis for supervisory objection to the application;
   (j) Upon determination by the Commissioner that an application to operate

the same manner as required for a branch office with such supporting data that is pertinent to the application. Such application and supporting data shall be sworn to as prescribed by Section 2.01 of the Texas Savings and Loan Act. However it is not intended that the general rules applying to branches and charters as to public need, undue harm, and profitability need be established;

\*   \*   \*   \*   \*   \*

(m) A mobile facility shall not be considered to involve the strict application of the rules generally applying to charters and branches. Upon establishment of the foregoing criteria the standard as to public need, undue harm and profitability shall be prima facie established."

The term "foregoing criteria," as used in Section m, above, apparently refers to the previously specified requirements for a mobile facility that we have set out in full in Footnote No. 1.

Section 2.08 of the Savings and Loan Act, Tex.Rev.Civ.Stat.Ann. art. 852a, Vernon's Ann.Civ.St. states the requirements for the granting of a charter application. Included therein are the following provisions:

"(3) there is a public need for the proposed association and the volume of business in the community in which the proposed association will conduct its business is such as to indicate profitable operation;

(4) the operation of the proposed association will not unduly harm any existing association."

The Savings and Loan Act contains no provision for mobile facilities; however, previously, the statute made no provision for branch offices. Branch offices were declared within the purview of the statute in Southwestern Savings and Loan Association v. Falkner, 160 Tex. 417, 331 S.W.2d 917 (1960) wherein the Court stated:

"It is undoubtedly the purpose of Article 881a–2 to protect against the evils of excessively zealous competition through control of the number of building and loan associations in a specified area. That purpose can be completely frustrated if branch offices can be opened without the approval of the Commissioner at any place selected by the directors of an existing association. Having been denied a charter to operate in area A but granted a charter to operate in area B, an association could then establish a branch office in area A and thus by indirection secure rights and privileges which had been denied to it on the statutory ground that the establishment of the office was inimical to the public interest."

In *Southwestern,* the Court was also faced with the question as to whether the specific rules which had been adopted to control the establishment of branch offices were valid. The Court stated that, general-

---

a mobile facility is complete, and if it has been preliminarily determined that there is no basis for supervisory objection, the Commissioner shall advise the applicant, in writing, to publish, within fifteen (15) days from the date of such advice, in a newspaper printed in the English language and having general circulation in each community proposed to be served, a notice of the filing of the application in the form prescribed for charter and branch applications;

(k) Promptly after publication of the notice, the applicant shall submit a copy thereof accompanied by the publishers affidavit of publication;

(l) Within ten (10) days prior to the date of the hearing if the Commissioner has received no written statements of intention to appear in person or by attorney to protest the application the hearing may be dispensed with by the Commissioner;

(m) A mobile facility shall not be considered to involve the strict application of the rules generally applying to charter and branches. Upon establishment of the foregoing criteria the standard as to public need, undue harm and profitability shall be prima facie established. (revised effective 8/4/69.)"

ly, a legislative delegation of rule-making authority must fix standards in order to be valid but that under its interpretation of the act as then written, the same basic standards are set for the approval or disapproval of applications to open branch offices as are set for the granting of an application for a charter in the first instance. That the statutory standards of public convenience and advantage, and adequate population to assure reasonable support, are sufficient statutory basis for the rules and regulations.

The law in *Southwestern* was followed in the holding of this Court in Gerst v. Jefferson County Savings and Loan Association, 390 S.W.2d 318 (Tex.Civ.App., Austin, 1965, writ ref'd n. r. e.). Here we held that public necessity was a requisite to the granting of a branch application regardless of whether or not the rule so specified. That the rules as read or as interpreted cannot supplant the statutes.

We further extended the rationale of *Southwestern* and *Jefferson County* in a recent opinion of this Court styled Lewis v. Colorado County Federal · Savings and Loan Association, 456 S.W.2d 445 (Tex. Civ.App., Austin, 1970, writ filed), invalidating the rules relating to agencies of savings and loan associations.

Appellants remind us that in Gerst v. Oak Cliff Savings and Loan Association, 432 S.W.2d 702 (Tex.1968), the Supreme Court stated that it was never the intention of the Legislature to put the Building Loan Section of the Finance Commission in a straight jacket in exercising its rule making powers under Article 342–114, and further, that the courts shall not look solely to one particular provision of the act, but must look to all applicable provisions. We do not pass over this admonition lightly; however, we cannot escape the fact that the primary purpose of charter offices, branches or agencies, whether on wheels or fixed to the ground, is to secure loans and savings. Consequently, what's sauce for the goose is sauce for the gander and the basic standards applicable under the statute must be satisfied with respect to a mobile facility as well as to any other savings and loan device.

Nor do we believe the decision urged by Appellants, of the Circuit Court of Appeals, Eighth Circuit, Central Savings & Loan Ass'n of Chariton, Iowa v. Federal Home Loan Bank Bd., 422 F.2d 504 to be persuasive here. The use of mobile facilities were authorized as an adjunct to savings and loan institutions under the law and facts of that case. However, we note that authorization of the mobile units was allowed at only three of the eleven locations sought, the Court stating that from its examination of the record the administrative board had considered "the interrelationship of various factors relating to each subject community such as size, population, wealth, income * * * banks, home loans, location of other savings and loan institutions and a myriad of other details."

In view of the foregoing we need not consider Appellees' crosspoint.[2]

The judgment of the trial court is affirmed.

Affirmed.

SHANNON, J., not sitting.

2. "The trial court erred in failing to hold that the manner in which the Commissioner conducted the hearing in general and specifically his refusal to permit the calling of applicant's officer as an adverse witness constitutes a denial of procedural due process and deprived Appellees of equal protection of the laws as guaranteed by the Fourteenth Amendment to the Constitution of the United States and by Article I, Sections 3 and 19 of the Constitution of the State of Texas, Vernon's Ann.St."