FIRST FEDERAL SAVINGS AND LOAN
ASSOCIATION, et al., Appellants,

v.

L. Alvis VANDYGRIFF, Savings and
Loan Commissioner of Texas, et
al., Appellees.

No. 13462.

Court of Appeals of Texas,
Austin.

Sept. 1, 1982.

Rehearing Denied Oct. 6, 1982.

Conrad P. Werkenthin, Clark, Thomas, Winters & Shapiro, Gary Evatt, Clark, Thomas, Winters & Shapiro, Austin, for appellants.

Larry Temple, Mark White, Atty. Gen., Nancy O. Ricketts, Asst. Atty. Gen., Austin, for appellees.

Before PHILLIPS, C. J., and SHANNON and POWERS, JJ.

POWERS, Justice.

The Savings and Loan Commissioner of Texas, after the hearing required by § 2.13 of the Savings and Loan Act, Tex.Rev.Civ. Stat.Ann. art. 852a, approved the application of Bexar County Savings Association to remove its home office from one site in San Antonio, Texas, to another site within the same city but sixteen miles distant. Appellants, First Federal Savings and Loan Association and Travis Savings and Loan Association, unsuccessfully opposed the relocation in the agency proceedings. In their suit for judicial review, the district court affirmed the Commissioner's final order. The Commissioner and the applicant, Bexar County Savings Association, are appellees.

Appellants challenge by point of error the validity of the administrative rule which purports to fix the findings of fact necessary to be made before the Commissioner may approve the removal of an association's office from its immediate vicinity.[1] The

1. The rule is codified in Tex.Admin.Code tit. 7, § 57.1. It has been superseded by a revised rule which addresses the objections raised by appellants and discussed in our opinion. 6 Tex.Reg. 935 (eff. Mar. 31, 1981). We deal herein with the rule as it was originally promulgated and applied in the proceedings now under review. In its original form, the rule read in part as follows:

§ 57.1 (056.04.00.001). Change of Office Location Not Requiring Approval; Application for Change of Location; Findings for Approval.

(a) An association may not move any office beyond its immediate vicinity without prior approval of the commissioner. "Immediate vicinity" means the area included within a radius or distance of one mile from the present location of such office. Any relocation within the immediate vicinity as defined in this section will require the approval of the commissioner, if the office to be relocated has not been operating at its present location for more than two years.

(b) Before giving the approval the commissioner shall affirmatively find that:

rule was promulgated by the Savings and Loan Section of the Finance Commission of Texas, acting under the rule-making power delegated to the Section in Tex.Rev.Civ. Stat.Ann. art. 342–114, a component statute of the Texas Banking Code of 1943.

■ Appellants contend the rule is invalid on its face and in its operation because it permits the Commissioner to approve the removal of an office from its immediate vicinity in contravention of certain general objectives implicit in the Savings and Loan Act and fundamental to the regulatory scheme established therein.[2] Appellants point to the provisions of § 2.08 of the Savings and Loan Act. That section serves three important regulatory functions: (1) it expressly applies to the Commissioner's approval of new associations' applications for charters, fixing the ultimate findings which he must make before he may approve such applications; (2) while nominally applicable only to the Commissioner's approval of new-charter applications, by implication § 2.08 establishes the general objectives of the State in its regulation of savings and loan associations, expressed as "basic standards," preserving thereby the constitution-

ality of the rule-making power which article 342–114 of the Texas Banking Code delegates to the Savings and Loan Section; and (3) these basic standards constitute the criteria by which to measure whether a particular rule promulgated by the Section is within the legitimate scope of its rule-making power. *Southwestern Savings and Loan Association v. Falkner,* 160 Tex. 417, 331 S.W.2d 917 (1960).

The third function of § 2.08—its service as a reference for criteria by which to measure the validity of a rule promulgated by the Savings and Loan Section—is illustrated in several judicial decisions wherein the court determined the validity of rules promulgated by the Section to govern the Commissioner in his exercise of an approval power in analogous circumstances: *Gerst v. Oak Cliff Savings and Loan Association,* 432 S.W.2d 702 (Tex.1968), approval of branch-office applications; *Lewis v. Colorado County Federal Savings and Loan Association,* 456 S.W.2d 445 (Tex.Civ.App.—Austin 1970, writ ref'd n.r.e.), approval of savings and loan agents and agencies; and *Lewis v. Peoples Savings and Loan Association,* 463 S.W.2d 284 (Tex.Civ.App.—Austin

---

(1) the operation to be relocated will not unduly harm any other association operating in the community to be served by the proposed new location; and

(2) the population within the community to be served by the proposed new location affords a reasonable promise of adequate support for the proposed relocated office.

(c) Each application for such approval shall state the exact proposed new location of the new office to be relocated and shall be supported with statements, exhibits, maps, and other data, properly verified under oath, which shall be sufficiently detailed and comprehensive to enable the commissioner to pass upon these factors. Such supporting data shall also include estimates of the cost of removal to and maintenance of the new location.

2. Section 2.08 provides in part as follows:
Approval of application for charter
Sec. 2.08. The Commissioner shall not approve any charter application unless he shall have affirmatively found from the data furnished with the application, the evidence adduced at such hearing and his official records that:

(1) the requisites, where applicable, set forth in Sections 2.02 [permanent reserve fund stock], 2.03 [stock requirements for proposed

permanent reserve fund stock associations], 2.04 [paid-in surplus requirements for permanent reserve fund stock associations], 2.05 [savings account requirements for proposed associations without permanent reserve fund stock], and 2.06 [expense fund requirements for proposed association without permanent reserve fund stock] have been complied with and that the Articles of incorporation comply with all other provisions of this Act;

(2) the character, responsibility and general fitness of the persons named in the articles of incorporation are such as to command confidence and warrant belief that the business of the proposed association will be honestly and efficiently conducted in accordance with the intent and purpose of this Act and that the proposed association will have qualified full-time management;

(3) there is a public need for the proposed association and the volume of business in the community in which the proposed association will conduct its business is such as to indicate profitable operation;

(4) the operation of the proposed association will not unduly harm any existing association.

1971, writ ref'd n.r.e.), approval of mobile savings and loan facilities.

Section 2.08 manifests only *basic* standards, it does not constitute a straitjacket. The Savings and Loan Section may, within the legitimate scope of § 2.08, supplement the provisions of the Savings and Loan Act or otherwise incorporate in specific rules the public policy of the State, as that policy is declared in the Act. *Gerst v. Oak Cliff Savings and Loan Association, supra.* "The determining factor in . . . dealing with the question of whether or not a particular administrative agency has exceeded its rule-making powers is that the rule's provisions must be in harmony with the general objectives of the Act involved." *Id.*

■ A fundamental objective of the Savings and Loan Act is to provide reasonable assurance that savings and loan associations are conducted soundly and profitably at places where there is a public need for their services and where they do not harmfully interfere with adequate services being provided by another association. *Gerst v. Oak Cliff Savings and Loan Association, supra.* Section 2.08, in the context of new-charter applications, expresses this fundamental objective by conditioning the Commissioner's right to approve the application upon favorable findings by him relative to public need, the expected profitable operation of the new association as measured by the volume of business in the community to be served, the likelihood of undue harm to existing associations, and the prospects for sound operation as indicated by the character, fitness, experience and ability of the organizers of the new association and those who will manage its affairs.

A comparison of the basic standards of § 2.08, and the ultimate findings required of the Commissioner before he may approve the removal of an association's office from its immediate vicinity, reveals the following differences:

1. *Public Need.* The Commissioner may approve an application for the change of an office location without finding that a public need exists for savings and loan services at the new location.

2. *Profitable Operation.* The Commissioner may approve an application for the change of an office location without finding that the volume of business where the proposed association will conduct its business is such as to indicate profitable operation. The rule does, however, impose the requirement that the Commissioner make a cognate finding before approving the relocation: he must find that the "population" within the community to be served from the proposed new location affords a reasonable promise of "adequate support" for the office where it will be situated.

3. *Undue Harm.* The Commissioner may approve an application for the change of an office location without finding that the change will occasion no undue harm to "any existing association." The rule does, however, impose the requirement that the Commissioner make a closely analogous finding before approving the relocation; he must find that the relocation "will not unduly harm any other association operating in the community to be served by the proposed new location." The basic standard of § 2.08 is universal whereas the similar requirement imposed by the rule is limited in its application to "the community to be served by the proposed new location."

4. *Sound Operation.* The basic standards of § 2.08 require for new-charter approval that the Commissioner make affirmative findings relative to the capabilities and character of the organizers and the management of the proposed association; the rule governing office relocations makes no comparable requirement.

In comparing the rule of the Savings and Loan Section to the general objective of having profitable, soundly-managed associations rendering savings and loan services at places where the public need is met and ruinous competition avoided, we conclude that the Savings and Loan Section has exceeded its rule-making power in permitting the Commissioner to approve the removal of an office from its immediate vicinity with no consideration of the issue of public need—the matching of savings and loan

services with the public's need for them at the location. The objective is not served by requiring a finding of no "undue harm" to any other association in the community.[3] The objective is to avoid too much, or ruinous competition, destructive of stability and the solvency of savings and loan associations, and the consequent social harm which would follow, while simultaneously avoiding too little competition and the abuses made possible by a monopolistic position, such as inadequate or overly expensive services. The pertinent inquiry is invoked when an association seeks to offer a full-range of savings and loan services from a new location, whether as a result of a new charter, a branch office, or the removal of a home office from its old location to the new. The consequences of too little and too much competition are the same, whatever the occasion for either.

In the present case, it is undisputed that the applicant, having no other office, seeks to move its only office to another location sixteen miles distant, and there provide a full range of services "in the same general area" where two other associations have recently established their own home offices, one of which is 1.6 miles and the other one mile from the site of the applicant's proposed new office. An association may not accomplish by indirection that which it could not accomplish directly. *Southwest Savings and Loan Association v. Falkner, supra.* Had the applicant sought to establish a branch office at the same location, or had a new-charter applicant sought to establish its home office at the same location, an invocation of the public need inquiry is obvious and unquestioned. Texas Savings and Loan Act, art. 852a, § 2.08; Tex.Admin.Code tit. 7, § 53.4. By omitting to require a finding of public need in the case of office relocations outside the immediate

vicinity, the rule now under review permits the establishment of a new savings and loan office offering a full-range of services from a new location where it will arguably be in competition with other associations offering similar services. The rule is therefore out of harmony with a basic objective of the regulatory scheme contained in the Savings and Loan Act; indeed, the rule seriously impedes that objective. *Gerst v. Oak Cliff Savings & Loan Association, supra.*

One may not logically say, as appellees argue, that the public need which presumably is met at the applicant's present location will carry forward to a new location when the applicant serves an entire county, making redundant any new inquiry or finding relative to the element of public need. The argument is not permissible because it must remain an open question *whether* the public need is in truth so uniform in kind and degree, with respect to all the pertinent services offered by the applicant, as to be totally independent of the physical location from which the service is, and is sought to be, provided, at whatever point public need is found in a particular case to lie along the continuum between "mere convenience on the one hand and an absolute or indispensable need on the other." *Gerst v. Nixon, supra.* One may not say, as a matter of law, that the public need is of that nature in every circumstance wherein an association seeks to remove its office from the immediate vicinity, which is the effect of the rule's omission to address the basic standard of public need.

We therefore hold the rule in question invalid on its face under the principles of *Lewis v. Gonzales County Savings and Loan Association, supra; Lewis v. Colorado County Savings and Loan Association, su-*

---

**3.** Although it is convenient for regulatory and other purposes to deal separately with the various elements of public need, profitable operation, undue harm to existing associations, and sound management, these elements are obviously interrelated. For example, subsection (3) of § 2.08 embraces in one sentence the elements of public need, volume of business, and profitable operation, tacitly recognizing their interrelationship. Nevertheless, the conjunctive "and" also recognizes that the element of public need contemplates a larger, different, and less simple inquiry than does the mere question of expected profitability, as the element of public need is discussed in, for example, *Gerst v. Nixon,* 411 S.W.2d 350 (Tex.1966), and *Gerst v. Goldsbury,* 434 S.W.2d 665 (Tex. 1968).

pra; and *Lewis v. Peoples Savings and Loan Association, supra.*[4]

■ In reply to appellants' contention as to the validity of the rule in question, appellees argue that any defect in the rule was cured by (1) their introduction of evidence, in the agency hearing, relative to the question of public need, (2) the action of the hearing officer in offering a postponement of the hearing to allow appellants an opportunity to meet such evidence (which they refused, electing to stand on their claim that the rule was defective), and (3) the Commissioner's express finding in his final order that "[t]here is a public need for the relocation of the home office applied for." We disagree with appellees' contention because it presumes that the Commissioner could, at his pleasure or convenience, en-large his administrative power and authority beyond that given him by statute and administrative rule, that he was not bound by the applicable legislative rule promulgated by the Savings and Loan Section to govern the matter before him, and that he could by-pass the right, power and duty of the Section to tailor or precisely formulate bases for decision in harmony with the general objectives of the Savings and Loan Act.

The Commissioner's final order recites that he found the following "ultimate facts":

A. There is a public need for the relocation of the home office applied for;

B. The volume of business in the community in which the relocated home office would conduct its business is such as

---

4. The rule contravenes in another respect the general objective of the Savings and Loan Act discussed in the text, insofar as the rule permits the Commissioner to approve the relocation of an association's office without an inquiry relative to the effect such action may have on the association's profitable operation. The basic standard of § 2.08 specifies an inquiry and finding to be made in terms of profitable operation estimated on the basis of the volume of business in the community to be served. The rule specifies a drastically different inquiry and finding, that is, whether the population of the community affords a reasonable promise of adequate support.

While the basic standard and the rule are in a degree analogous, it is patent that the latter allows for the Commissioner's approval based upon a finding that is at once far less rigorous and precise than that required by the basic standard. The precise and undiluted requirement of the basic standard would seem to be as pertinent to the relocation of a home office, outside its immediate vicinity, as to its establishment as an original home office in the case of a newly chartered association. We hold the rule invalid on this ground as well, for the rule as written, impedes that aspect of the general objective aimed at securing the *profitable* operation of savings and loan associations, so far as regulation may assist in that regard.

In contrast, we do not believe that the rule's slight departure from the other basic standards, relative to undue harm to other associations and the quality of the applicant's management, are out of harmony with the basic objective. While the basic standard of § 2.08 directs a universal inquiry, with respect to the possibility of harm to other associations, the rule preserves the general objective by directing the inquiry to the precise place where such harm is practically possible—in the community to be served.

The element of sound management is reasonably omitted from the rule, in the case of office relocations, and does not impede the general objective discussed in the text because sound management is assured by other powers granted the Commissioner in other parts of the Savings and Loan Act and no reason is apparent why the relocation may have an effect on the quality of the applicant's management. The Savings and Loan Section is, of course, free to require that an applicant for an office relocation obtain a finding along this line, as it has done in the new rule effective March 31, 1981, by requiring a finding that the applicant has no serious "supervisory problems." *Gerst v. Oak Cliff Savings and Loan Association, supra.*

Because we hold the rule invalid on the ground that it omits to require a finding relative to public need at the new location, we need not consider appellants' contention that the regulatory scheme provided by the Savings and Loan Act and the Texas Banking Code of 1943, and the reasonable intendments arising therefrom, require that the removal of an association's office comport with the public necessity in (1) any new and different community which the association will serve from the new location; and (2) the community served from the present location, if the relocation will result in the abandonment of any saving and loan services in that community. Appellants urge this contention on the principles enunciated in *Citizens Bank of Bryan v. First State Bank of Hearne,* 580 S.W.2d 344 (Tex.1979), where the Supreme Court of Texas so interpreted the regulatory scheme applicable to commercial banks.

to indicate a profitable operation to [sic] Bexar County Savings Association;

C. The operation of the relocated home office will not unduly harm any other association operating in the community to be served by the new location;

D. The population within the community to be served by the proposed new location of Bexar County Savings Association's home office affords a reasonable promise of adequate support for the proposed relocated office.

These "ultimate facts" manifest a congenital schizophrenia in the final order—it recites findings mandated by the applicable rule of the Savings and Loan Section as well as those findings dictated by § 2.08 of the Savings and Loan Act, the latter being findings expressly required for new charters and, by implication, the basic standards for the regulation of all savings and loan associations.

It was the Commissioner's duty to follow the provisions of the rule which the Savings and Loan Section promulgated to govern the proceedings and which established the findings necessary for the Commissioner to approve the application submitted to him, as that rule was codified in Tex.Admin. Code tit. 7, § 57.1. The Commissioner was not free to formulate, several months after the hearing concluded, different findings in accordance with what he thought the general objective of the Savings and Loan Act required (that is, findings relative to public need and profitable operation as indicated by the volume of business in the community). This is true even though, as we have held, the rule promulgated by the Section was invalid because it omitted to require these very findings. While the Commissioner's action in this respect is understandable as the response of an able and conscientious administrator faced with an invalid rule, his action is nonetheless in excess of his statutory authority and in contravention of the orderly processes contemplated by APTRA and the constituent statutes (the Savings and Loan Act and the Texas Banking Code of 1943) for agency rule making, the adjudication of contested cases, and the supervision and regulation of savings and loan associations generally.

The Savings and Loan Act delegates to the Commissioner numerous and varied powers with respect to the supervision and regulation of savings and loan associations. The power of rule making is *not* among the powers delegated to the Commissioner, notwithstanding several references in the Act to rules and regulations promulgated by "the Commissioner and the Savings and Loan Section." §§ 2.01, 5.04, 7.03, 11.12. The Texas Banking Code of 1943 clearly provides that the Commissioner shall have no substantive role in the promulgation of rules and regulations. The statute places that power exclusively in the Savings and Loan Section of the Finance Commission of Texas. Tex.Rev.Civ.Stat.Ann. arts. 342–114, 342–205. While the Commissioner may not vote on a resolution adopting any rule or regulation, he is given a procedural role in the exercise of the rule-making power by the terms of § 11.10 of the Savings and Loan Act and, by virtue of Tex.Rev.Civ. Stat.Ann. art. 342–205 he may have an advisory role as well, as implied by the requirement that he attend all meetings of the Savings and Loan Section. The Savings and Loan Section is, however, the exclusive rule-making authority in the matter of general rules and regulations. (We are not here concerned with procedural rules). *Id.*

■ The rules of an administrative agency may be grouped in three general categories according to the purpose served by each: procedural rules, interpretive rules, and legislative rules. The first category need not concern us in the present case. Interpretive rules are basically those which interpret and apply the provisions of an applicable statute. "No sanction attaches to the violation of an interpretive rule as such; the sanction attaches to the violation of the statute, which the rule merely interprets." 1 F. Cooper, State Administrative Law § 1, at 175. As an example of an interpretive rule, Professor Cooper refers to the following:

[A]n agency given broad discretionary powers in respect to the granting of li-

censes may formulate a statement of the conditions which must be met in order to obtain a license. In many cases, agencies have thus worked out standards and policies which in effect control the administrative decision in a wide variety of cases. *Id.* Interpretive rules, while they do not have the force and effect of statutes, are entitled to great deference by the judicial department. In contrast, legislative rules have the following characteristics: (1) they · go beyond interpretation to promulgate new substantive provisions which are, nevertheless, within the latitude allowed by a governing statute; and (2) the statute which delegates to the agency the power to make rules provides that those rules shall have authoritative force if within the delegated power. *Id.,* at 175–176. The characteristic last named gives such rules the force and effect of statutes; they are binding upon all concerned, including the judicial department, provided the rule is (a) reasonable, (b) within the power delegated to the agency, and (c) the product of proper procedure. *Bullock v. Hewlett-Packard Co.,* 628 S.W.2d 754 (Tex.1982); *General Electric Credit Corp. v. Smail,* 584 S.W.2d 690 (Tex. 1979); *B–R Dredging Co. v. Rodriguez,* 564 S.W.2d 693 (Tex.1978).

The rule-making power delegated to the Savings and Loan Section of the Finance Commission is said to be plenary. *Gerst v. Oak Cliff Savings & Loan Association, supra; Jefco, Inc. v. Lewis,* 520 S.W.2d 915 (Tex.Civ.App.—Austin 1975, writ ref'd n.r. e.). The Savings and Loan Act expressly provides that sanctions attach not only to statutory violations but to violations of the rules and regulations of the Savings and Loan Section. Tex.Rev.Civ.Stat.Ann. art. 852a, §§ 8.13, 8.14.

The Savings and Loan Act contains no provisions which directly and expressly purport to govern the Commissioner in the exercise of his statutory power to approve an application for relocation of an association's office; Section 2.13 of the Act provides simply that no office may be moved from its immediate vicinity without the Commissioner's approval. The rule promulgated by the Savings and Loan Section to apply in the circumstances, while it has an obvious interpretive aspect, fundamentally serves to establish substantive provisions to fill the statutory interstice, thus controlling the Commissioner's discretion in approving applications submitted to him.

■ We therefore conclude that the rule promulgated by the Section is a "legislative" rule, having the force and effect of a statute, provided it is reasonable, within the power of the Savings and Loan Section to promulgate, and the product of proper procedure. If so, it must be interpreted in the same manner as a statute. *Lewis v. Jacksonville Building and Loan Association, supra.*

■ One aspect of statutory law is that a statute is binding upon all within its jurisdictional limits and within its terms until repealed or declared invalid. The Commissioner, charged to exercise his regulatory powers according to the rules and regulations promulgated by the Savings and Loan Section, Tex.Rev.Civ.Stat.Ann. art. 342–205, was as much bound by the rule under discussion as were any others who participated in the proceedings. *Arizona Grocery Co. v. Atchison, Topeka & Santa Fe Railway Co.,* 284 U.S. 370, 386, 52 S.Ct. 183, 185, 76 L.Ed. 348 (1932).[5]

---

5. There are other decisions which hold, apparently on the grounds of procedural or substantive due process, that administrators are bound by their own regulations. *Vitarelli v. Seaton,* 359 U.S. 535, 79 S.Ct. 968, 3 L.Ed.2d 1012 (1959); *Service v. Dulles,* 354 U.S. 363, 77 S.Ct. 1152, 1 L.Ed.2d 1403 (1957); *Accardi v. Shaughnessy,* 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681 (1954); *Bridges v. Wixon,* 326 U.S. 135, 65 S.Ct. 1443, 89 L.Ed. 2103 (1945). Our decision in the present case is controlled, however, by APTRA, the Texas Savings and Loan Act, the Texas Banking Code of 1943, and general principles of administrative law. Though raised by appellants, we need not reach the issue of due process.

Moreover, it has been held that an administrator has discretion to relax or modify *procedural* rules, adopted for the orderly transaction of agency business, when in a given case the ends of justice require such action; the administrator's action in such instances are immune from

There are sound reasons why administrators should be bound to the terms of "legislative" rules in their adjudication of contested cases. Implicit in the listing of legal errors contained in Tex.Rev.Civ.Stat.Ann. art. 6252–13a, the Administrative Procedure and Texas Register Act (APTRA), § 19(d)(3), any of which requires reversal of an agency's final order if a party's substantial rights have been prejudiced, is a legislative mandate that administrative adjudications be conducted with procedural regularity independent of result. This regularity is frustrated, if not denied, if administrators are free to alter the prescribed bases for their decision making, or to supply in lieu of these prescribed bases those of their own *ad hoc* formulation, or to supplement these prescribed bases on an *ad hoc* basis. The ill consequences of this kind of undisciplined and arbitrary prerogative are obvious; hence, administrators are bound by their own legislative rules. *Arizona Grocery Co. v. Atchison, Topeka & Santa Fe Railway Co., supra.* Neither APTRA, the Savings and Loan Act, nor the Texas Banking Code of 1943 contemplate that the Commissioner's adjudicatory powers be exercised in oriental fashion where he sits "like a kadi [6] under a tree dispensing justice according to considerations of individual expediency." *Terminiello v. City of Chicago,* 337 U.S. 1, 11, 69 S.Ct. 894, 899, 93 L.Ed. 1131 (1949) (Frankfurter, J., dissenting) (footnote added).

While an administrative agency has the undoubted discretion under many statutes to proceed by rule-making or by adjudication, developing decisional principles on a case-by-case basis, *S. E. C. v. Chenery Corp.,* 332 U.S. 194, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947), *State Board of Insurance v. Deffebach,* 631 S.W.2d 794 (Tex.App.—Austin

1982, writ pending), the agency's election was made in the present case when the Savings and Loan Section promulgated a rule clearly and specifically applicable to the proceedings and directed that it be followed by the Commissioner in his adjudication of the issues of fact and law which the rule made applicable. The Savings and Loan Section, acting in its quasi-legislative capacity, promulgated the only bases upon which the Commissioner could approve future applications to relocate an office. The application in the present case invoked only those grounds, for no others existed at the time. The Commissioner, acting in his quasi-judicial capacity could not legally ignore the Section's legislative pronouncements, substitute others in their stead, or by implication retroactively amend or repeal what the Section had pronounced, just as he would not have been free to take any similar action with respect to an applicable statute. *NLRB v. Wyman-Gordon Co.,* 394 U.S. 759, 89 S.Ct. 1426, 22 L.Ed.2d 709 (1969); *Addison v. Holly Hill Fruit Products, Inc.,* 322 U.S. 607, 64 S.Ct. 1215, 88 L.Ed. 1488 (1944).

Accordingly, we reverse the judgment of the district court and remand the cause to that court with instructions that it set aside as invalid the final order of the Commissioner.

Reversed and Remanded.

PHILLIPS, C. J., not sitting.

ON MOTION FOR REHEARING

POWERS, Justice.

The substance of appellees' motion for rehearing amounts to an argument that our

---

judicial review except upon a showing of substantial prejudice to the complaining party. *American Farm Lines v. Black Ball Freight,* 397 U.S. 532, 90 S.Ct. 1288, 25 L.Ed.2d 547 (1970); *Lewis v. Jacksonville Building & Loan Association,* 540 S.W.2d 307 (Tex.1976). In contrast to such cases, we deal in the present case with agency rules which are patently substantive rules, intended to supply the bases for decision in an area where the applicable statute failed to provide such bases, though expressly granting

the Commissioner the power to make the decision.

6. *"Kadi"* is a variant of "cadi," from the Arabic word pronounced "gada," from which the Spanish word "alcalde" is also derived, and refers to a civil judge among the Turks, Arabs, Persians, and others, usually a judge of a town or village. Oxford English Dictionary 314 (Compact Ed. 1971).

decision has the result of invalidating "every move of every savings and loan office in Texas since the contested rule was first adopted in 1964." Appellees do not offer an explanation of how this result follows from our decision. Rather, they content themselves with advancing this *a priori* notion as if it were a sanctified legal principle. A moment's reflection will reveal it to have an opposite character.

 Earlier orders by which the Commissioner approved the relocation of savings and loan offices are not subject to collateral attack, for such orders are specifically within the jurisdiction of the Commissioner to render. Texas Savings and Loan Act, Tex. Rev.Civ.Stat.Ann. art. 852a, § 2.13 (1964). The orders are therefore not void and may be set aside only in a direct proceeding brought for that purpose, even if they show on their face an absence of the required fact findings. *Railroad Commission of Texas v. Roberdeau*, 150 Tex. 506, 242 S.W.2d 881 (1951). Nevertheless, the earlier orders are not subject to direct attack either, for it is now impossible to bring a suit for that purpose within the thirty days allowed by Section 11.12(2) of the Savings and Loan Act, *supra*, and Section 19(b) of APTRA. Tex.Rev.Civ.Stat.Ann. art. 6252–13a, § 19(b) (Supp.1982). Being subject to neither a direct nor a collateral attack, the Commissioner's previous orders, approving the relocation of savings and loan offices, may be viewed only as valid and subsisting orders.

Appellees' argument is without substance and their motion for rehearing is overruled.

Reversed and Remanded on Motion for Rehearing.

PHILLIPS, C. J., not participating.