IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-93-321-CV





R. D. ADAMS AND CONNIE ADAMS,



 APPELLANTS


vs.





AMWEST SAVINGS ASSOCIATION,



 APPELLEE



 




FROM THE DISTRICT COURT OF SAN SABA COUNTY, 33RD JUDICIAL DISTRICT



NO. 6922, HONORABLE D. V. HAMMOND, JUDGE PRESIDING



 


 




 The plaintiff, Amwest Savings Association recovered summary judgment against
the defendants, R. D. Adams and his wife Connie Adams ("Adamses") in a suit for the balance
due on a promissory note. The Adamses appeal. We will affirm the trial-court judgment.



THE CONTROVERSY


 On April 27, 1988, the Adamses executed and delivered to Heart O' Texas Savings
Association their interest-bearing note in the original amount of $13,122. Heart O' Texas went
into receivership in October 1988. The receiver, the Federal Savings and Loan Insurance
Corporation, assigned the note to Amwest. Amwest sued the Adamses to recover the balance due
on the note. The Adamses answered by general denial and the affirmative defenses of false
representation, fraud, illegality, and failure of consideration. 

 Amwest moved for summary judgment, contending that under the summary
judgment record there were no genuine issues of material fact on the pleaded issues and that
Amwest was entitled to judgment as a matter of law. See Tex. R. Civ. P. 166a(c). The Adamses'
response and supporting affidavit asserted that issues of material fact existed with regard to their
affirmative defenses. Specifically, they contended the note at issue was "tied directly" to previous
promissory notes they executed after officers and employees of Heart O' Texas told them the debt
evidenced by each note would be secured with Heart O' Texas stock, which was now worthless. 
They attached copies of four previous notes to their supporting affidavit. Each lists Heart O'
Texas stock shares as collateral. (1) The note dated April 27, 1988, on which Amwest sued,
purported to be a renewal note but did not refer explicitly to any previous note. Additionally, a
section of the note was blank where it called for the lender to indicate what property secured the
debt. After notice and hearing, the trial court rendered summary judgment in favor of Amwest. 
 



I.


 In their first point of error, the Adamses assert the summary judgment was
erroneous because genuine issues of material fact, regarding their affirmative defense of illegality,
precluded judgment as a matter of law. (2) 

 Article 852a of the Texas Savings and Loan Act prohibits a savings and loan
association to make a loan secured by its own stock. Texas Savings and Loan Act, Tex. Rev.
Civ. Stat. Ann. art. 852a, § 2.03(b) (West Supp. 1994). (3) Chapter two of article 852a of the Act
deals with the formation of savings and loan associations. Section 2.03 pertains to the issuance
of common stock and provides in part: "Both common and preferred stock must be fully paid for
in cash in advance of issuance, and an association may not make a loan against the shares of its
outstanding stock." Act § 2.03(b). 

 The Adamses argue the promissory notes attached to their supporting affidavit
indicate that Heart O' Texas violated section 2.03 of the Act by making a loan against shares of
its own stock. They argue further that a genuine issue of material fact existed regarding whether
the original loan transaction was "directly tied" to the April 27th note through a series of renewal
notes. The Adamses conclude that if the April 27th note was part of the original transaction, it
is void and unenforceable due to illegality, and summary judgment was not justified. Amwest
rejoins that the note on which it sued the Adamses is not secured by Heart O' Texas stock and
therefore does not violate section 2.03(b). Additionally, Amwest argues that even assuming the
original transaction violated section 2.03(b), and such violation is somehow "directly tied" to the
note at issue, the transaction is not void and unenforceable. 

 Parties who rely on an affirmative defense to avoid summary judgment must make
a summary judgment showing sufficient to raise an issue of material fact on each element of the
defense. Brownlee v. Brownlee, 665 S.W.2d 111, 112 (Tex. 1984). Any disputed fact issues
must be material to the disposition of the case. See First Nat'l Bank v. Arrow Oil & Gas, Inc.,
818 S.W.2d 159, 163 (Tex. App.--Amarillo 1991, no writ). Thus, assuming the Adamses
successfully raised a disputed fact issue concerning whether the April 27th note was part of a
previous transaction that violated section 2.03(b), the question remains whether the violation
constitutes an affirmative defense to their liability on the note. The Adamses have not cited
authority or presented argument to support their contention that a promissory note executed and
delivered in violation of section 2.03(b) of the Act is void and unenforceable. 

 A contract made in violation of a statute is not necessarily void. Rogers v. Traders
& Gen. Ins. Co., 139 S.W.2d 784, 786 (Tex. 1940). The effect of the statute on the prohibited
contract depends upon the legislative intent. Id.; American Nat'l Ins. Co. v. Tabor, 230 S.W.
397, 399 (Tex. 1921). Three factors relevant to this determination are: (1) whether the statute
expressly declares void any contracts made in violation of its terms; (2) whether the statute itself
imposes penalties for its violation; and (3) the purpose of the statute. See American Nat'l Ins.
Co., 230 S.W. at 399; Saulny v. RDY, Inc., 760 S.W.2d 813, 815 (Tex. App.--Corpus Christi
1988, no writ). 

 The Act does not expressly declare void any contracts made in violation of its
terms. Additionally, the Act provides penalties for violations. Act § 11.16 (West Supp. 1994)
(providing that association which knowingly violates or fails to comply with provisions of statute
may be required to pay no more than $1,000 per day for each day it so fails after lawful notice
of delinquency). These factors reasonably imply that the legislature intended the statutory
remedies to suffice and did not intend that non-complying contracts be void or unenforceable. 
American Nat'l Ins. Co., 230 S.W. at 399. Finally, when the legislature enacts a statute for the
purpose of protecting the public against fraud or to safeguard health or morals, an agreement in
violation thereof is usually void. Rogers, 139 S.W.2d at 787. It is true that the business of
savings and loan associations is a matter affecting the public interest, and such associations are
quasi-public institutions. Brazosport Sav. & Loan Ass'n v. American Sav. & Loan Ass'n, 342
S.W.2d 747, 749 (Tex. 1961). However, the objective of the Act is to provide assurance that
savings and loan associations are conducted soundly and profitably at places where there is a
public need for their services and where their operation will not harmfully interfere with adequate
services provided by another association. First Fed. Sav. & Loan Ass'n v. Vandygriff, 639
S.W.2d 492, 495 (Tex. App.--Austin 1982, writ dism'd); see also Gerst v. Oak Cliff Sav. & Loan
Ass'n, 432 S.W.2d 702, 707 (Tex. 1968); Savings & Loan Comm'r v. First Fed. Sav. & Loan
Ass'n, 434 S.W.2d 883, 890 (Tex. Civ. App.--Austin 1968, writ ref'd n.r.e.). Further, the
apparent purpose of section 2.03(b) is not to protect the borrower who gives association stock
as collateral, but to ensure that outstanding stock represents corporate assets, not liabilities. This
purpose would be frustrated if the Adamses were allowed to borrow funds using Heart O' Texas
stock as collateral and subsequently defend a suit to collect on the note by claiming the transaction
is void and unenforceable. 

 We conclude that even if the Adamses raised an issue of fact regarding whether the
April 27th note was part of an earlier transaction that violated section 2.03 of the Act, that
violation would not as a matter of law constitute an affirmative defense to Amwest's recovery on
the promissory note. The asserted fact dispute is therefore not material and did not preclude
summary judgment. 



II.


 The Adamses also assert in their first point of error that the summary-judgment
record raised genuine issues of material fact concerning their right to an offset for fraud in a stock
transaction. Tex. Bus. & Com. Code Ann. § 27.01(b)-(c) (West 1987) (providing for actual
damages for fraud and for exemplary damages if fraud committed with actual awareness). 
Although Texas Rule of Civil Procedure 94 classifies fraud as an affirmative defense, fraud is also
a cause of action and may be pled as a counterclaim. Adams v. Tri-Continental Leasing Corp.,
713 S.W.2d 152, 153 (Tex. App.--Dallas 1986, no writ). The Adamses pled fraud as an
affirmative defense in both their first amended original answer and their response to the motion
for summary judgment. Thus, the Adamses bore the burden to make a summary judgment record
sufficient to raise a genuine issue of material fact as to each element of the defense. Brownlee,
665 S.W.2d at 112. They made no claim for damages based on the alleged fraud. 

 Under section 27.01, fraud in a stock transaction consists of either: (1) a false
representation of a past or existing material fact, made to a person to induce them to enter into
a contract, and relied on by that person in entering into the contract; or (2) a false promise to do
an act, when the promise is material, made with no intent to fulfill it, made to a person to induce
the person to enter a contract, and relied on by that person in entering into that contract. Tex.
Bus. & Com. Code Ann. § 27.01(a)(1)-(2) (West 1987). Nothing in the summary judgment
record raises a disputed issue of material fact with regard to the element of a false representation
or promise. In their supporting affidavit, the Adamses stated that officers of Heart O' Texas told
them the promissory note would be secured by Heart O' Texas stock. (4) They presented no
deposition testimony, affidavits, or other record showing that such a statement was a false
representation or promise. The notes attached to the affidavit indicate that the loan was in fact
secured by Heart O' Texas stock. The Adamses merely alleged that the stock at some subsequent
time became worthless. Additionally, there is no record showing that any false statement was
made specifically to induce the Adamses to enter the loan transaction. Holding the Adamses have
not carried their burden of raising a genuine issue of material fact on the affirmative defense of
fraud, we overrule their first point of error.

 In light of our disposition of the Adamses' first point of error, we do not address
their second point regarding whether the "D'Oench Duhme" doctrine bars their affirmative
defenses. (5) 

 Finding no error, we affirm the trial-court judgment.



 

 John Powers, Justice

Before Justices Powers, Aboussie and Jones

Affirmed

Filed: April 27, 1994

Do Not Publish
1.   The four promissory notes attached to the Adamses'
affidavit and allegedly arising from the same transaction as the
note at issue were made by the Adamses to Heart O' Texas and were
secured by Heart O' Texas stock. The notes were as follows: (1)
dated March 12, 1984, for the principal sum of $20,000, with 500
shares of stock as collateral; (2) dated September 8, 1984, for the
principal sum of $20,000, with 500 shares of stock as collateral;
(3) dated April 5, 1985, for the principal sum of $18,000, with 500
shares of stock as collateral; (4) dated April 17, 1986, for the
principal sum of $16,200 with 3150 shares of stock as collateral. 
None of the notes expressly indicated they were renewal notes. 
Although the principal amounts decreased over time and the number
of shares increased, the record provides no information regarding
these changes. The Adamses contend on appeal that the loan from
Heart O' Texas was conditioned on use of the proceeds to buy shares
of Heart O' Texas stock, a contention they did not make in the
trial court where they pled only that the loan was secured by Heart
O' Texas stock.
2.   The Adamses assert there are genuine issues of material
fact with respect to only two of the four affirmative defenses they
raised in their response to motion for summary judgment --
illegality and fraud. The Adams do not contend there are issues of
fact regarding Amwest's cause of action.
3.   The Adamses raise also for the first time on appeal a
contention that the summary judgment record raised material fact
issues regarding whether the transaction violated "12 U.S.C. §
1464(q), and 12 U.S.C. § 1971 et seq." without any statement as to
how these provisions apply to this case. We may not consider as
grounds for reversal issues not expressly presented to the trial
court by written motion, answer, or other response. Tex. R. Civ.
P. 166a(c). 
4.   The substantive portion of the supporting affidavit reads: 



 

 The note [that is] the issue of the present suit
against me and my wife is tied directly to the several
previous notes and their renewals, which we executed
after being told by the officers and employees of
Heart O' Texas Savings Association that each
successive note would be secured and collateralized
with Heart O' Texas Savings Association stock, and the
stock has become worthless.
5.   The "statement of facts" from the summary judgment hearing
indicates that the parties argued whether the "D'Oench Duhme"
doctrine prohibited the Adamses from invoking personal defenses to
the action against them, although neither party raised the issue in
written pleadings. See D'Oench, Duhme & Co. v. Federal Deposit
Ins. Corp., 315 U.S. 447 (1942). Because we conclude the summary-judgment record raised no genuine issues of material fact on the
Adamses' pleaded defenses, we need not decide whether D'Oench Duhme
would bar the defenses if raised by the summary judgment record.