**W. Sale LEWIS, Savings and Loan Commissioner, et al., Petitioners,**

v.

**JACKSONVILLE BUILDING AND LOAN ASSOCIATION, et al., Respondents.**

**No. B-5814.**

Supreme Court of Texas.

July 21, 1976.

Rehearing Denied Sept. 29, 1976.

John L. Hill, Atty. Gen., Thomas M. Pollan, Asst. Atty. Gen., Larry E. Temple, and George E. Ramsey, III, Austin, for petitioners.

Heath, Davis & McCalla, Dudley D. McCalla, Austin, for respondents.

DENTON, Justice.

This is a suit by Jacksonville Building and Loan Association and Rusk Federal Savings and Loan Association, the respondents here, to set aside the order of the Savings and Loan Commissioner approving and granting the charter application of the Cherokee Savings and Loan Association to be operated in Jacksonville, Texas. The trial court upheld the Commissioner's order. The court of civil appeals, by a majority opinion, reversed and rendered judgment setting aside the Commissioner's order. 531 S.W.2d 433. We reverse the judgment of the Court of Civil Appeals and affirm the judgment of the trial court.

The respondents contend here, as in the court of civil appeals, that the order granting the charter application was invalid on three grounds: (1) the order was not supported by substantial evidence; (2) the order did not contain concise and explicit statement of the findings in the order as required by Article 852a, § 11.11(4) Vernon's Texas Civil Statutes Annotated; and (3) the Commissioner failed to render his decision within the 45 day period required by the rules and regulations. The court of civil appeals sustained respondent's third contention, but did not rule on the contention that the order was not supported by substantial evidence or that the order did not meet the requirements of § 11.11(4) of the Texas Savings and Loan Act.

The initial question is whether or not the requirement of Rule 1.9 of the Rules and Regulations for Savings and Loan Associations specifying a decision on pending applications within 45 calendar days after the date the hearing is finally closed, is mandatory and the failure to act in that period of time invalidates the Commissioner's order. The facts material to this issue are uncontested. Application was made by a group of local citizens to the Savings and Loan Commissioner for a charter for a new Savings and Loan Association to be located in Jacksonville, Texas, under the name of Cherokee Savings and Loan Association. Shortly thereafter, Tyler Savings and Loan Association made application for a branch office to be located in Jacksonville. The respondents here opposed both applications. The Savings and Loan Commissioner consolidated the two applications for hearing. A full hearing on both applications was held on August 6 and 7, 1974. By letter of October 10, 1974, 64 days after the hearing closed, the Commissioner announced his decision to approve the charter application and deny the branch application. The order approving the charter application for Petitioner Cherokee Savings and Loan Association was issued November 18, 1974, 103 days after the hearing closed.

Rule 1.9 of the Rules and Regulations for Savings and Loan Associations reads as follows:

1.9 The Commissioner *shall* render his decision within forty-five (45) calendar days after the date the hearing is finally closed if the hearing was held in accordance with Section 1.3 above, or after the date on which the hearing is dispensed with, as the case may be provided, how-

ever, in cases of conflicting applications meeting the requirements of Section 2.14 of the Texas Savings and Loan Act, where one or more subsequent applications are filed before the first application is heard, the Commissioner may delay his decision on all such competing applications until forty-five (45) days after the last such application has been heard. [emphasis ours]

Article 342–114, Vernon's Texas Civil Statutes Annotated authorizes the Savings and Loan Section of the Finance Commission to promulgate general rules and regulations not inconsistent with the Constitution and statutes of this State. The question is one of construction of the administrative rule. Valid rules and regulations promulgated by an administrative agency acting within its statutory authority have the force and effect of legislation. *Texarkana and Ft. S. Ry. Co. v. Houston Gas & Fuel Co.*, 121 Tex. 594, 51 S.W.2d 284 (1932); *Northeast Tarrant County Water Authority v. Board of Water Engineers,* 367 S.W.2d 720 (Tex.Civ.App., 1963, no writ). Administrative rules are ordinarily construed like statutes.

There is no absolute test by which it may be determined whether an administrative rule or regulation is mandatory or directory. The prime object is to ascertain and give effect to the intent of the rule or regulation. Although the word "shall" is generally construed to be mandatory, it may be and frequently is held to be directory. In determining whether the administrative agency intended the provision to be mandatory or directory, consideration should be given to the entire rule, its nature, objects and the consequences which would result from construing it each way. Provisions which do not go to the essence of the act to be performed, but which are for the purpose of promoting the proper, orderly, and prompt conduct of business, are not ordinarily regarded as mandatory. If the provision directed doing of a thing in a certain time without any negative words restraining it afterwards, the provision as to time is usually directory. See *Chisholm*

*v. Bewley Mills,* 155 Tex. 400, 287 S.W.2d 943 (1956); *Thomas v. Groebl,* 147 Tex. 70, 212 S.W.2d 625 (1948); *Markowsky v. Newman,* 134 Tex. 440, 136 S.W.2d 808 (1940); *Federal Crude Oil Company v. Yount-Lee Oil Company,* 122 Tex. 21, 52 S.W.2d 56, 61; Sutherland, Statutory Construction 3rd Ed., Vol. 3, p. 95, Sec. 5813 et seq., 82 C.J.S. Statutes § 376 et seq., p. 869.

The court of civil appeals based its ruling upon *Bay City Federal Savings & Loan Association v. Lewis,* 474 S.W.2d 459 (Tex. 1971). There this Court interpreted the requirements of Article 852a § 11.11(4) Vernon's Texas Annotated Civil Statutes, that the findings of fact in the Commissioner's order if set forth in statutory language shall be accompanied by concise and explicit statement of underlying facts which support the findings. After reviewing the order, which approved a charter application for Savings and Loan Association, we held that the order was invalid where the Commissioner failed to set forth precise and explicit statements of underlying facts supporting the findings that the statutory requirements had been complied with. This statutory mandate requiring recitation of underlying facts in support of statutory findings in *Bay City* was clearly a requirement of substantive law. The reliance by the majority of the court of civil appeals on *Bay City* is misplaced.

There are numerous cases in other jurisdictions that have passed upon this question. In *Muskego-Norway Consolidated Schools Joint School District v. Wisconsin Employment Relations Board,* 32 Wis.2d 478, 151 N.W.2d 84 (1967), the court held that a statute requiring the State Employment Relations Board to file its findings and decision within 60 days after the closing of a hearing was held to be directory and not mandatory. In *Carrigan v. Illinois Liquor Control Commission,* 19 Ill.2d 230, 166 N.E.2d 574 (1960), the Illinois Supreme Court was considering certain provisions of the Liquor Control Act. The court held that under a statute providing that within 20 days after service of any order or decision of the Liquor Control Commission upon

any party to a proceeding, such party may apply for a rehearing and the commission shall receive and consider such application for rehearing within 20 days from the filing thereof. The court held that that portion of the statute concerning rehearing within 20 days is merely directory, and failure of the commission to pass upon the application for rehearing within 20 days did not deprive the commission of jurisdiction. In *Huffman v. Kite*, 198 Va. 196, 93 S.E.2d 328 (1956), the court held that the language of a statute providing that appointments to School Trustee Electoral Board are to be made by the Circuit Court or judge within 30 days of July 1, 1950, and every four years thereafter and that vacancies shall be filled within 30 days, is not mandatory but only directory, notwithstanding use of "shall", and the fact that the court failed to make the appointment within 30 days of July 1, 1954. For similar holdings see *Koehn v. State Board of Equalization, Department of Alcoholic Beverage Control*, 166 Cal.App.2d 109, 333 P.2d 125 (1958); *Village of Port Chester v. Industrial Commissioner*, 32 Misc.2d 64, 222 N.Y.S.2d 779 (N.Y.Sup., 1961); and *Allen County Department of Public Welfare v. Ball Memorial Hospital Association Inc.*, 253 Ind. 179, 252 N.E.2d 424 (1969).

■ Rule 1.9 does not provide, either expressly or by implication, that the Commissioner's order filed more than 45 days after the hearing is finally closed, becomes voidable upon appeal. The rule contains no word restricting the action of the Commissioner after the expiration of 45 days after the close of the hearing. No legal consequences are spelled out for the failure of the Commissioner to render his decision within the specified time.

The purpose of the rule is to promote prompt and orderly consideration and action by the Savings and Loan Commissioner. It is not intended to fix a time limitation upon the power of the commission to render decisions after expiration of the 45 days mentioned, or to invalidate a tardy decision. We, therefore, hold the 45 day provision of the Rule 1.9 is directory, and

that the failure of the Commissioner to render a decision within that time period will not, of itself, invalidate the Commissioner's order.

Respondents further contend by counterpoint that the order of the Commissioner granting the charter application of Cherokee Savings and Loan was invalid, because there was not substantial evidence to support the Commissioner's order on the standard of public need and a sufficient volume of business to indicate a profitable operation.

■ Orders of the Savings and Loan Commissioner are reviewed to determine whether they are supported by substantial evidence. If there is substantial evidence in the record supporting the findings, the order must stand even though the Commissioner might have decided differently from what the reviewing court may have decided. *Gerst v. Guardian Savings and Loan Association*, 434 S.W.2d 113 (Tex.1968); *Lewis v. Gonzales County Savings and Loan Association*, 474 S.W.2d 453 (Tex.1971).

At the hearing before the Commissioner, Edwin Brown, an organizing director; John Ament, a Jacksonville attorney; Roland Christie, a building contractor in Jacksonville; W. D. Waller, an organizing director; Dr. L. J. Spellman, Assistant Director of Finance and Public Affairs at The University of Texas at Austin, and Dr. Robert Mettlen, an economist at The University of Texas at Austin, testified in support of the application. George L. Barber, Jr., President of the Jacksonville Building and Loan Association; William Tosh, President of Rusk Federal Savings and Loan Association, Rusk, Texas, and Dr. George William Berry, an economist, were witnesses in opposition. It was established that indicators reflected a growth in population of Cherokee County since the 1970 census. The total work force in the county had increased during this period from 1970 to 1973, and the total motor vehicle registration in the county during that same period increased at an average annual rate of 5.23 per cent. The record shows that the total number of persons employed in Cherokee increased

from 11,500 in 1970 to 12,020 in 1973, an increase of 4.52 per cent. Unemployment during that same period decreased from 500 to 400. Dr. Spellman characterized these work force estimates as a strong indication of the economy of the county. The total number of manufacturing plants in Cherokee County increased from 53 in 1963 to 72 in 1973. In the city of Jacksonville alone this number increased from 39 to 59 during this same period. Records in evidence show the county's gross sale of tangible personal property increased from over 83 million in 1968 to 152 million in 1973. The annual growth rate between 1968 and 1973 was 12.77 per cent. The total bank debits for the city of Jacksonville nearly doubled between 1968 and 1973. As population, employment and business activity increased in Cherokee County in recent years there has also been a substantial increase in income and earnings. The record shows a total personal income in Cherokee County, as reported by the United States Department of Commerce, of $62,204,000 in 1967 and $89,622,000 in 1971, an increase of over 44 per cent between 1967 and 1971. Additional evidence of the economic base and economic growth in Cherokee County was found in the savings and deposit increase experienced by the financial institutions of the county. Total bank deposits in Cherokee County stood at $28,614,000 as of June 30, 1966; by June 30, 1970 the total bank deposits had increased to $43,682,000; by June 30, 1974, they had increased to $69,671,000. Total time and savings deposits of individuals, partnerships and corporations in Cherokee County Banks stood at $5,537,000 in 1966, $15,035,000 in 1970, and $29,834,000 as of June 30, 1974. These kinds of deposits increased by more than five-fold since 1966, and nearly doubled between 1970 and 1974.

It was shown that the two existing Savings and Loan Associations presently in Cherokee County showed healthy increases in recent years. Jacksonville Building and Loan Association had a total savings of $28,814,000 at the end of 1969, and by 1973 the total savings of that association had increased to $43,035,000, an increase of almost 50 per cent during the four-year period. Rusk Federal Savings and Loan Association located in Rusk, Texas, had a total savings of $12,317,000 at the end of 1969. These savings grew to reach $15,406,000 in 1973, an increase of over 25 per cent in the four-year period. The total of savings and loan savings in time and savings deposits of individuals, partnerships and corporations in the banks in Cherokee County, was $55,270,000 at the end of 1969. The combined totals in these two categories increased to $85,378,000 by the end of 1973, an increase of over 50 per cent during this four-year period. The record shows that there was a continuous increasing loan demand within Cherokee County during recent years. The deed of trust recordings for Cherokee County show a constant growth. In 1971 there were 826 separate recordings with a dollar amount of $50,000 or less in Cherokee County; and the total amount of all these recordings was $8,223,914.00. Jacksonville Building and Loan Association was shown as mortgagee on 229 of these recordings in a total dollar amount of $1,915,647.00, Rusk Federal Savings and Loan Association was shown as mortgagee on 47 of these recordings at a total dollar amount of $558,211.00. Other Savings and Loan Associations were shown as mortgagee on 34 recordings in a total dollar amount of $458,915.00, and banks were shown as mortgagee on 215 recordings in a total dollar amount of $2,325,343.00. The proponent's economic experts, Dr. Spellman and Dr. Mettlen, testified that based upon all the evidence which they presented, and which was in the record at the time they testified, there was a public need for the Cherokee Savings and Loan Association. The record shows that the volume of loan business and potential loan business in Cherokee County was also sufficient to indicate a profitable operation by Cherokee Loan Association. The increasing building activity throughout the county and mortgage loan activity, as reflected by the statistics found by the Commissioner from the record before him, evidence that availability of business. From all the facts before the Commissioner, he concluded and found there is a sufficient

volume of loan business in Cherokee County to indicate a profitable operation by Cherokee Savings and Loan Association.

Respondents offered extensive evidence in opposition to the petitioner's application for a charter. The underlying thrust of the evidence, presented largely by officials of competing savings and loan associations and an economic expert, is to the effect that Cherokee County's economy had not improved to the extent that an additional savings and loan association was indicated, and that the existing lending agencies were adequately serving the area.

█ A review of the record leads us to the conclusion that there is substantial evidence to support the Commissioner's order granting the charter application of the Cherokee Savings and Loan Association.

█ Finally the argument is made that the Commissioner's order is not in compliance with Article 852a, § 11.11(4) Vernon's Texas Civil Statutes Annotated in that it does not contain a concise and explicit statement of the underlying facts supporting the findings. A review of the order reveals a clear compliance with the statute. Full statements of the facts which support the Commissioner's findings are included in the order. We find the order to be in full compliance with Section 11.11(4) of the Texas Savings and Loan Act.

The judgment of the court of civil appeals is reversed and the judgment of the trial court, upholding the order of the Commissioner, is affirmed.