

# Office of the Attorney General
## State of Texas

**DAN MORALES**
ATTORNEY GENERAL

December 28, 1992

Mr. Charles D. Travis
Executive Director
Employees Retirement System of Texas
P. O. Box 13207
Austin, Texas 78711-3207

Opinion No. DM-193

Re: Whether V.T.C.S. article 6813g requires the Employees Retirement System of Texas to designate broad types of coverage or specific vendors of supplemental optional benefits programs and related questions (RQ-403)

Dear Mr. Travis:

You have asked several questions regarding the role of the Employees Retirement System of Texas (ERS) in implementing V.T.C.S. article 6813g which authorizes deductions for "supplemental optional benefits programs" ("supplemental benefits programs" or "programs") from state employees' wages. Article 6813g was enacted into law in 1991. *See* Acts 1991, 72d Leg., 2d C.S., ch. 12, § 24.01, at 365. Section 2 of that article provides as follows:

> In addition to deductions for coverage under the Texas Employees Uniform Group Insurance Benefits Act . . . or other law, an employee of a state agency may authorize in writing a deduction each pay period from the employee's salary or wage payment for coverage of the employee under a supplemental optional benefits program, including a program of permanent life insurance, catastrophic illness insurance, disability insurance, or prepaid legal services, that may be made if the program has been approved by the [ERS] under Section 3 of this article. The written authorization must direct the comptroller or, if applicable, the appropriate financial officer of an institution of higher education to transfer the withheld funds to the program designated by the employee. The comptroller or financial officer shall comply with the direction.

Section 3 provides:

> The [ERS] shall designate supplemental benefit programs that are eligible to receive deductions under Section 2 of this article and that promote the interests of the state and state agency employees.

Section 6 provides:

> The state may withhold from the employee's salary or wage payment an administrative fee for making the deduction under this article. The fee may not exceed the actual administrative cost of making the deduction or the highest fee charged by the state for making a similar deduction, whichever amount is less.

With regard to these provisions, you ask the following questions:

> 1) Whether the ERS is required to designate one or more supplemental benefit programs;

> 2) Whether the term "programs" refers to broad types of coverage or individual vendors;

> 3) Whether the ERS is authorized or required to take any action beyond designating the program, such as soliciting bids or approving individual vendors;

> 4) Whether the ERS is required to monitor or regulate designated programs; and

> 5) Whether the ERS may assess fees to pay for administrative costs, and against whom such fees may be assessed.

You suggest that article 6813g merely obliges the ERS to designate eligible supplemental benefits programs, if any, and that the ERS is only authorized to designate the broad types of coverage available, rather than individual vendors to provide coverage. You also suggest that article 6813g does not require or authorize the ERS to approve particular vendors or administer any such programs because "[t]he ERS is granted no rule-making authority, nor is there any provision for a bidding process."

We have reviewed article 6813g. The language of the statute provides little guidance, and we are not aware of any legislative history which would provide answers to your questions. Thus, we address your questions relying solely on the bare language of the statute. First, you ask whether the ERS is required to designate any supplemental benefits program. Section 3 which contains the mandatory term "shall" clearly requires the ERS to designate supplemental benefits programs, provided it concludes that they "promote the interests of the state and state agency employees." *See Lewis v. Jacksonville Bldg. & Loan Ass'n*, 540 S.W.2d 307, 310 (Tex. 1976) (the term "shall" is generally mandatory). Of course, in the unlikely event that the ERS concludes that *no* supplemental benefits program promotes those interests, it is not required to designate any program.

We address your second and third questions together. You ask if the term "supplemental benefits programs" refers to broad types of coverage or to particular

vendors, and if the ERS is required to take any action beyond designating a program, such as soliciting bids or approving individual vendors. As noted above, section 3 requires the ERS to designate supplemental benefits programs "that promote the interests of the state and state agency employees." While a broad category of coverage might meet this criteria, particular vendors providing such coverage might not. Thus, section 3 suggests that the ERS is required to do more than simply designate broad types of coverage.

Furthermore, section 2 authorizes wage deductions for coverage under "a supplemental optional benefits program . . . that may be made if the program has been *approved* by the [ERS] . . . ." (Emphasis added.) This provision suggests the legislature's intent to authorize deductions for particular programs provided by particular vendors approved by the ERS. It would make no sense to authorize deductions for broad types of coverage, but not authorize deductions for particular programs provided by particular vendors. In addition, we note that section 2 provides for the transfer of "withheld funds to the *program* designated by the employee." (Emphasis added.) In this context, it is clear that the term "program" refers to a specific program provided by a specific vendor, rather than to broad types of coverage. We conclude that "supplemental benefits programs" refers to particular programs provided by particular vendors as opposed to broad types of coverage, and that the ERS is required to approve particular programs provided by particular vendors. We note, however, that the statute does not prescribe any particular method the ERS must use to approve or designate a program, thus leaving the method of approval and designation to the ERS's discretion.

In answer to your fourth question, although article 6813g does not grant the ERS rule-making authority, we believe it impliedly authorizes the ERS to monitor or regulate supplemental benefits programs. This authorization is implicit in the language in section 3 authorizing the ERS to ensure that programs "promote the interests of the state and state agency employees." *See Stauffer v. City of San Antonio*, 344 S.W.2d 158, 160 (Tex. 1961) (administrative agencies have powers necessarily implied from authority or duties expressly imposed). Thus, the ERS is authorized to regulate or monitor supplemental benefits programs if it determines that this is necessary to promote the interests of the state and state agency employees. The vague and unspecific language of article 6813g cannot be fairly read, however, to *require* the ERS to undertake such activities.

With respect to your query about fees, section 6 authorizes the state to withhold from an employee's wages an administrative fee for making the deduction. The legislature has been quite explicit in authorizing this particular fee and has not authorized the assessment of any other fee. Therefore, we conclude that the ERS is not authorized to assess a fee to pay for its administrative costs in designating, approving or regulating supplemental benefits programs against either vendors of such programs or participating employees. *See Ex parte Halsted*, 182 S.W.2d 479, 484 (Tex. Crim. App. 1944) (recognizing rule of statutory construction that "the express mention of one thing is tantamount to an exclusion of all others").

## S U M M A R Y

Article 6813g, V.T.C.S., requires the Employees Retirement System of Texas (ERS) to designate "supplemental benefits programs" for state employee wage deductions, provided it concludes that such programs "promote the interests of the state and state agency employees." The term "supplemental benefits programs" refers to particular vendors as opposed to broad types of coverage. Article 6813g requires the ERS to approve particular supplemental benefits programs provided by particular vendors. This provision impliedly authorizes the ERS to regulate or monitor supplemental benefits programs if it determines that this is necessary to promote the interests of the state and state agency employees. This provision does not authorize the ERS to assess a fee to pay for its administrative costs against either vendors of supplemental benefits programs or participating employees.

Very truly yours,

DAN MORALES
Attorney General of Texas

WILL PRYOR
First Assistant Attorney General

MARY KELLER
Deputy Assistant Attorney General

RENEA HICKS
Special Assistant Attorney General

MADELEINE B. JOHNSON
Chair, Opinion Committee

Prepared by Mary R. Crouter
Assistant Attorney General

RECEIVED

JAN 12 1993