**PLANO PARKWAY OFFICE CONDOMINIUMS,**
Appellant,

v.

**BEVER PROPERTIES, LLC and Jesse M. Taylor, D.D.S., P.A., Appellees.**

No. 05–05–01533–CV.

Court of Appeals of Texas, Dallas.

Nov. 26, 2007.

Thad D. Spalding, Hermes Sargent Bates, L.L.P., Dallas, for appellant.

J. Edwin Martin, Coyt Randal Johnston, Robert L. Tobey, Johnston & Tobey, P.C., Dallas, for appellees.

Before Justices O'NEILL, FITZGERALD, and LANG–MIERS.

## OPINION ON MOTION FOR REHEARING

Opinion by Justice LANG–MIERS.

Appellees' motion for rehearing is denied. We withdraw our opinion of August 28, 2007. This is now the opinion of the Court.

This is a lawsuit brought by the owner of a condominium unit and the leasee of that unit, the appellees, Bever Properties, LLC and Jesse M. Taylor, D.D.S., P.A., (collectively, Bever Properties), against the condominium association, appellant Plano Parkway Office Condominiums, and the owners of the condominium units neighboring Bever Properties' unit, among others. Appellees filed a lawsuit seeking a declaration that appellant, Plano Parkway Office Condominiums, "is not cognizable as a condominium association under Texas law" because, contrary to the requirements of Texas law, the secretary of state had not issued a certificate of incorporation for that association before the condominium units were conveyed and the articles of incorporation provide that the association has no members. The trial court granted summary judgment for appellees against appellant. We reverse the summary judgment and remand this case to the trial court for further proceedings.

### FACTUAL AND PROCEDURAL BACKGROUND

In April 2003, Jerry Huffman Custom Builders, LLC (Huffman Builders) pur-

chased property located in Plano, Texas, to develop an office condominium. In September 2003, Huffman Builders filed a declaration pursuant to sections 82.051 and 82.055 of the Texas Property Code (the Condominium Declaration).[1]

Huffman Builders sold three units: the first unit in November 2003, the second unit in January 2004, and the third unit to appellee Bever Properties, LLC in April 2004, which subsequently leased it to appellee Jesse M. Taylor, D.D.S., P.A. Bever Properties was issued a special warranty deed with vendor's lien, which was subject to the Condominium Declaration.

In August 2004, Jerry Huffman, the president of Huffman Builders, filed articles of incorporation for appellant Plano Parkway Office Condominiums (PPOC). Thereafter, multiple disputes arose between Bever Properties, on the one hand, and PPOC and the other unit owners, on the other hand. As a result, Bever Properties filed a lawsuit against PPOC, Huffman Builders, and others. Bever Properties initially sought, among other things, declaratory relief to correct the description of the property contained in the Condominium Declaration. Bever Properties later amended its petition to seek, among other things, declarations that (1) PPOC is not cognizable as a condominium association under Texas law and (2) Bever Properties is not subject to PPOC's condominium regime.

Bever Properties moved for partial summary judgment against PPOC on two grounds: (1) PPOC "failed to meet" the "statutory mandates" of the Uniform Condominium Act and therefore did not "even exist," and (2) "[s]ince there is no condominium association under Texas law, the

---

1. Bever Properties stated during oral argument that it is undisputed that the Condominium Declaration was filed before the first unit

was sold. The contents of the Condominium Declaration are not at issue.

property owned by Bever Properties cannot be subject to its regime (*whether by way of the [Condominium Declaration], the Articles of Incorporation, the Bylaws or otherwise*)." It argued that because Huffman Builders conveyed all three units and later incorporated PPOC as a non-profit corporation with no members, PPOC "is simply not cognizable under Texas law" and Bever Properties is not subject to any rules contained in the Condominium Declaration or bylaws of PPOC. It also contended that the association lacked standing and capacity to assert any claims against Bever Properties in the lawsuit. In support of its argument, Bever Properties cited section 82.101 of the Texas Property Code, which requires a certificate of incorporation to be issued, either for a for-profit or non-profit corporation with members, before any units are conveyed.

The trial court granted Bever Properties' motion for summary judgment against PPOC, stating in its order that it "finds that the motion should be granted. The court further finds that [PPOC] does not legally exist, and therefore has no standing to assert claims in this matter." The trial court severed the remaining claims against the remaining defendants and deemed its summary judgment order against PPOC "a final and appealable judgment."

PPOC contends that we should reverse that judgment and raises three issues on appeal:

1. Does the fact that PPOC's articles of incorporation were filed after the units were conveyed preclude PPOC's legal existence and excuse Bever Properties' unit from the condominium regime?
2. If not, does the fact that PPOC's articles of incorporation indicate that it is [sic] corporation with no members preclude PPOC's legal existence and excuse Bever Properties' unit from the condominium regime?
3. Can a violation of Texas Property Code section 82.101 preclude the legal existence of the owners' association, if the secretary of state issues a certificate of incorporation?

Bever Properties concedes that PPOC legally exists.[2] Nevertheless, it contends that even if PPOC exists, it does not exist as a condominium association and cannot assert management authority over the unit owners. We disagree. Because of our disposition of issues one and two, we do not separately address issue three.

### STANDARD OF REVIEW

We construe the language in the statutes to determine whether Bever Properties is subject to the condominium regime. Statutory construction is a question of law, which we review de novo. *Johnson v. City of Fort Worth,* 774 S.W.2d 653, 656 (Tex. 1989); *Richardson Indep. Sch. Dist. v. GE Capital Corp.,* 58 S.W.3d 290, 293 (Tex. App.-Dallas 2001, no pet.). In construing a statute, our objective is to determine and give effect to the legislature's intent. *Helena Chem. Co. v. Wilkins,* 47 S.W.3d 486, 493 (Tex.2001); *Nat'l Liab. & Fire Ins. Co. v. Allen,* 15 S.W.3d 525, 527 (Tex.2000). When possible, the legislature's intent is determined by reading the language used in the particular statute and construing the statute in its entirety. *Helena Chem.,* 47 S.W.3d at 493. Even if the statutory language is not ambiguous on its face, we may also consider other factors, including the objective sought to be obtained, legislative history, and consequences of a particular

---

**2.** Bever Properties acknowledges that it included PPOC's certificate of incorporation in its summary judgment evidence.

construction. *Helena Chem.*, 47 S.W.3d at 493 (citing Tex. Gov't Code Ann. § 311.023 and *Ken Petroleum Corp. v. Questor Drilling Corp.*, 24 S.W.3d 344, 350 (Tex.2000)).

## CREATION OF CONDOMINIUMS

Under the Uniform Condominium Act, adopted in Texas in 1993 and codified as chapter 82 of the Texas Property Code, a "Condominium" is defined as "a form of real property with portions of the real property designated for separate ownership or occupancy, and the remainder of the real property designated for common ownership or occupancy solely by the owners of those portions." Tex. Prop.Code Ann. § 82.003(a)(8) (Vernon 2007). A condominium is created "only by recording a declaration" that contains certain information, including a description of the property, the number of units, and the name of the unit owners' association. *Id.* § 82.051(a) (condominium created "only by recording a declaration executed in the same manner as a deed"); *see also id.* § 82.055 (listing declaration requirements). Once created, unless the entire property is taken by condemnation or the declaration provides otherwise, a condominium may be terminated "only by the agreement of 100 percent of the votes in the association and each holder of a deed of trust or vendor's lien on a unit." *Id.* § 82.068(a). In this case, the Condominium Declaration was filed before any units were conveyed.

## CONDOMINIUM ASSOCIATIONS

A condominium is managed by an association consisting of its unit owners, who vote according to the provisions of the declaration and the Texas Property Code. *Id.* §§ 82.057, 82.101. The powers of the unit owners' association are governed by section 82.102 of the Texas Property Code, "unless otherwise provided by the declaration." *Id.* § 82.102(a). For example, section 82.102 gives the unit owners' association the power to (1) "adopt and amend bylaws;" (2) "adopt and amend rules regulating the use, occupancy, leasing or sale, maintenance, repair, modification, and appearance of units and common elements;" (3) adopt a budget and assess fees for common expenses; (4) impose penalties on, and suspend voting privileges of, owners who are delinquent in paying assessed fees; and (5) "exercise any other powers necessary and proper for the government and operation of the association." *Id.* § 82.102(a).

## ANALYSIS

**The Effect of the Issuance of the Certificate of PPOC's Incorporation After the Units Were Conveyed**

■ In its first issue, PPOC asks whether, based on the following language from the Texas Property Code, Bever Properties is excused from the condominium regime because PPOC's certificate of incorporation was issued after the condominium units were conveyed:

> A unit owners' association must be organized as a profit or nonprofit corporation. The declarant may not convey a unit until the secretary of state has issued a certificate of incorporation under Article 3.03, Texas Business Corporation Act, or Article 3.03, Texas Non–Profit Corporation Act (Article 1396–3.03, Vernon's Texas Civil Statutes).

*Id.* § 82.101. Bever Properties contends that instead of condominium ownership governed by statute, the unit owners' property rights are governed by common law and that "the joint management matters of the unit owners will be governed by centuries of jurisprudence, just like thousands of other Texas duplexes, triplexes, quadruplexes and other jointly owned properties which do not have duplex, triplex, quadruplex or other property associa-

tions." Bever Properties contends that all of the owners will have to unanimously agree on how the property is managed and that the Condominium Declaration, articles of incorporation, and bylaws have no effect on that management.

### What Does the Statute Mean?

■ To determine whether the unit owners are excused from the condominium regime we must determine whether the language of section 82.101 stating "declarant may not convey a unit until the secretary of state has issued a certificate of incorporation" is mandatory or directory. And "[t]o determine whether the Legislature intended a provision to be mandatory or directory, we consider the plain meaning of the words used, as well as the entire act, its nature and object, and the consequences that would follow from each construction." *Helena Chem.*, 47 S.W.3d at 493. Under section 311.016 of the Code Construction Act, the term " 'may not' imposes a prohibition and is synonymous with 'shall not,' " "unless the context in which the word or phrase appears necessarily requires a different construction or unless a different construction is expressly provided by statute." TEX. GOV'T CODE ANN. § 311.016 (Vernon 2005). However, when a statute requires that an act be performed within a certain time, but does not include any words restraining the act's performance after that time or stating the consequences of failure to act within the time specified, the timing provision is usually directory. *See Helena Chem.*, 47 S.W.3d at 495; *Lewis v. Jacksonville Bldg. and Loan Ass'n*, 540 S.W.2d 307, 310 (Tex. 1976); *Chisholm v. Bewley Mills*, 155 Tex. 400, 287 S.W.2d 943, 945 (1956).

### 1. Plain Meaning of Statute's Words

Under *Helena Chemical*, we first analyze the plain meaning of the words used in section 82.101. Although that section states that "the declarant may not convey a unit until the secretary of state has issued a certificate of incorporation" for the unit owners' association, it does not state any consequences for conveying a unit before the certificate of incorporation is issued. TEX. PROP.CODE ANN. § 82.101 (Vernon 2007). The absence of that language suggests that the "may not convey" requirement of section 82.101 is directory rather than mandatory. *See Helena Chem.*, 47 S.W.3d at 495; *see also Lewis*, 540 S.W.2d at 310 (holding timing requirement of administrative rule was merely directory because rule contained no restrictions on subsequent actions or consequences for failure to act within specified time); *Tex. Dept. of Pub. Safety v. Guerra*, 970 S.W.2d 645, 648–49 (Tex.App.-Austin 1998, pet. denied) (holding timing requirement under Texas Transportation Code merely directory based, in part, on lack of consequences for acting outside specified time).

### 2. Nature and Object of Uniform Condominium Act

■ Under *Helena Chemical*, we next analyze the nature and object of the Uniform Condominium Act to determine which interpretation furthers the purpose of the Act. *Helena Chem.*, 47 S.W.3d at 494. The preface to that Act explains that it was enacted for three primary purposes: (1) to make terminology and details of condominium statutes uniform so that national lenders could more easily assess the appropriateness of condominium documents and financing, (2) to make unit holders' "bundle of rights" more uniform so that "the increasingly mobile consumer" could become more educated "in this very complex area," and (3) to solve problems concerning "termination of condominiums, eminent domain, insurance, and the rights and obligations of lenders upon foreclosure

of a condominium project," which were "not satisfactorily addressed by any existing statute." Unif. Condo. Act, Prefatory Note, 7 Part II U.L.A. 452 (1980). Additionally, comment 1 to section 3–101 of the Uniform Condominium Act gives further insight into the purpose of this particular provision in the Act: "[t]he first purchaser of a unit is entitled to have in place the legal structure of the unit owners' association" in order to clarify the relationship between the unit owners and the developer/declarant and to allow unit owners a say in governance during the initial period of developer/declarant control. Unif. Condo. Act § 3–101 cmt. 1, 7 Part II U.L.A. 540 (1980).

Bever Properties argues that this provision is mandatory and that "by ignoring the Certificate Before Conveyance Mandate" the developer/declarant can retain "unfettered dominion and control over the legal structure of the condominium association, and thus the property rights of Bever Properties, after Bever Properties had paid Huffman for its property." But Bever Properties does not explain how any of the purposes for the Act would be furthered by construing the "may not convey" language in section 82.101 to mean that, if units are conveyed before the certificate of incorporation is issued, the units conveyed are not subject to a condominium regime at all. In fact, adopting Bever Properties' interpretation could create uncertainty and undermine the very unit owners' rights that the Act was intended to protect. Consequently, we conclude that Bever Properties' interpretation does not further the purposes of the Act.

### 3. Consequences of Mandatory Versus Directory Constructions

■ Finally, under *Helena Chemical,* we analyze the consequences that would follow from both mandatory and directory constructions. *Helena Chem.,* 47 S.W.3d at 494. If the language in section 82.101 is mandatory, and a developer/declarant nevertheless conveyed condominium units before the certificate of incorporation was issued, one possible consequence would be that the developer was not able to convey title to any units and the unit owners' titles are void. However, this consequence would not be consistent with one of the purposes of the Uniform Condominium Act, which is to protect consumers who buy a condominium subject to a properly filed declaration. *See generally* Unif. Condo. Act, Prefatory Note, 7 Part II U.L.A. 452 (1980). It would also not be consistent with comment 2 to section 2–103 of the Uniform Condominium Act, which states that the only defect that could affect title is a defect in the declaration because "the declaration is the instrument which creates and defines the units and common elements." *Id.* § 2–103 cmt. 2, 7 Part II U.L.A. 493 (1980). That comment also explains that defects in other documents "have no impact on title, whether or not recorded." *Id.* These comments indicate that the purpose of the Act is not to void a conveyance because of a defect in the timing of incorporating the unit owners' association.

Significantly, Bever Properties does not contend that conveyance of the unit before the certificate of incorporation was issued affects its title. Instead, Bever Properties contends that the consequence for conveying a unit before the certificate was issued is that it is not subject to the condominium regime at all and that the unit owners hold property interests governed by common law. But the declaration creates the condominium interests, and the declaration and statutes govern how the declaration and condominium interests can be terminated. We do not find support for Bever Properties' proposition that conveying a unit before the certificate of incorporation

is issued terminates the declaration or voids the condominium interests it created. In fact, adopting Bever Properties' interpretation could actually defeat one of the purposes of the Act. Instead of protecting the unit owners and making sure they have a say in governance while the developer is still in control, the unit owners could lose rights they expected to purchase as condominium owners. As a result, we conclude the legislature did not intend that the consequence of conveying a unit before the certificate of incorporation is issued but after the declaration is filed is that the units conveyed are not subject to the condominium regime.

If, on the other hand, section 82.101 is interpreted as directory, a unit owner would still obtain title to a condominium unit but could sue to force incorporation when a unit is conveyed before the certificate of incorporation is issued. This interpretation would be consistent with the last sentence of comment 2 to section 2–103 of the Uniform Condominium Act, which states that even though defects in instruments other than the declaration do not affect title, they do entitle unit owners "to appropriate relief under section 4–117" (i.e., section 82.161 of the Texas Property Code). UNIF. CONDO. ACT § 2–103 cmt. 2, 7 Part II U.L.A. 493 (1980). This interpretation would also be consistent with comment 4 to section 2–103 of the Act, which states that "[f]ailure to organize the unit owners' association at the time specified in Section 3–101 [i.e., section 82.101 of the Texas Property Code] would not be a defect in the declaration at all, and would not affect the validity or marketability of titles in the condominium. It would, however, be a violation of this Act, and create a claim for relief under Section 4–117 [i.e., section 82.161 of the Texas Property Code]." UNIF. CONDO. ACT § 2–103 cmt. 4, 7 Part II U.L.A. 494 (1980). And if a

certificate of incorporation had not been issued at the time a condominium interest was conveyed to the unit owner, "appropriate relief" under section 82.161 could entitle a unit owner to sue to force the developer/declarant to incorporate, and to recover "reasonable attorney's fees and costs of litigation" if the unit owner prevailed in that lawsuit. TEX. PROP.CODE ANN. § 82.161 (Vernon 2007). We conclude that this consequence, and not the complete defeat of the condominium regime, was the consequence contemplated by the legislature under the Act.

■ In summary, the Uniform Condominium Act and its commentary establish that the defining event in the creation of a condominium regime is the filing of a declaration under sections 82.051(a) and 82.055 of the Texas Property Code, not the incorporation of the unit owners' association. Based on review and application of the *Helena Chemical* factors, we conclude that the language in section 82.101 concerning the timing of incorporating the unit owners' association is directory. *See Helena Chem.*, 47 S.W.3d at 494. And we further conclude that Bever Properties is not excused from the condominium regime because the certificate of incorporation for PPOC was not issued before the units were conveyed. We resolve PPOC's first issue in favor of PPOC.

### Designation of PPOC as Corporation with No Members

■ In its second issue, PPOC asks whether Bever Properties is excused from the condominium regime because PPOC's articles of incorporation state that PPOC "will have no members." Bever Properties contends that those articles violate section 82.101, which states "[t]he members of the association at all times consists

exclusively of all unit owners."[3] PPOC states that it was a "technical error,"[4] to designate PPOC as a corporation with no members but argues that this error does not excuse Bever Properties from the condominium regime. We agree.

■ The language used in section 82.101 makes clear that all unit owners—and only unit owners—are members of the owners' association. And incorporating an association with no members, with less than all unit owners as members, or with non-unit-owners as members would not comply with section 82.101. But the statute does not state any consequence for noncompliance.

Bever Properties contends that this language creates a "Continuous and Exclusive Membership Mandate" that "mandates a hermetic seal between ownership rights and membership rights." It argues that the consequence of a failure to incorporate an association in accordance with the Act is to invalidate the condominium regime entirely. However, adopting this consequence would also invalidate all of the condominium rights the unit owners purchased and effectively terminate the declaration, which we have already held would be contrary to the language and purposes of the Act.

Instead, we conclude that the legislature's intent was that the consequence of a defect in the articles of incorporation is to allow the owner to pursue "appropriate relief" under section 82.161 (e.g., suing to force the developer/declarant to incorporate), not to defeat the entire condominium regime. *See* Tex. Prop.Code Ann. § 82.161 (Vernon 2007). This consequence is also consistent with Texas's Non–Profit Corporation Act, under which the articles of incorporation can be amended to reflect that PPOC is a non-profit corporation with members. *See* Tex.Rev.Civ. Stat. Ann. art. 1396–4.01 (Vernon 2003) ("A corporation may amend its articles of incorporation from time to time, in any and as many respects as may be desired, so long as its articles of incorporation as amended contain only such provisions as are lawful under this Act."); *Id.* art. 1396–2.08 (non-profit corporation may have members).

In summary, we conclude that this defect in PPOC's articles of incorporation does not excuse Bever Properties from the condominium regime. Accordingly, we resolve PPOC's second issue in favor of PPOC. And because Bever Properties concedes that PPOC's "status as a corporation is not disputed," we do not need to address PPOC's third issue, regarding whether "a violation of Texas Property Code section 82.101 preclude[s] the legal existence of the owners' association, if the secretary of state issues a certificate of incorporation."

## Conclusion

We reverse the summary judgment and remand this case to the trial court for

---

3. Although PPOC was designated in its articles of incorporation as a corporation with no members, the articles of incorporation also state that the purpose of PPOC is "[f]or the benefit and betterment of the property Owners of Plano Parkway Office Condominiums, which purposes are more specifically described in the By–Laws and Condominium Declaration of Plano Parkway Office Condominiums."

4. The two-page template "Form 202" used to incorporate an entity pursuant to article 3.02 of the Texas Non–Profit Corporation Act contains two alternatives under "Article 4—Organizational Structure," with blank boxes next to them: "A: The corporation will have members" and "B: The corporation will not have members." PPOC indicates that whoever filled out the form apparently checked the wrong box—the box next to the second alternative.

further proceedings consistent with this opinion.