May 7, 2008

The Honorable Jana Duty
Williamson County Attorney
Williamson County Justice Center,
   Second Floor
405 Martin Luther King Box 7
Georgetown, Texas 78626

Opinion No. GA-0624

Re: County payment to vendors under the Low-Income Vehicle Repair Assistance, Retrofit, and Accelerated Vehicle Retirement Program, and reimbursement to a county from the Texas Commission on Environmental Quality (RQ-0646-GA)

Dear Ms. Duty:

On behalf of the Williamson County Auditor, you ask about county payment and reimbursement of such payment under the Low-Income Vehicle Repair Assistance, Retrofit, and Accelerated Vehicle Retirement Program (LIRAP) established under chapter 382 of the Health and Safety Code.[1] You inform us that the LIRAP provides a method to assist low-income persons whose vehicles cannot meet emission standards. Request Letter, *supra* note 1, at 1. Under this program, you inform us, an eligible person takes such a vehicle to a participating dealer that repairs or replaces the vehicle. *See id.* The dealer is entitled to receive certain payments for the repair or replacement from a county participating in the program, and the county is subsequently, as you describe it, "reimbursed" for that payment by the Texas Commission on Environmental Quality (the "TCEQ"). *See id.* In 2007, the Legislature adopted Senate Bill 12, which among other changes to the LIRAP, reduced the time period within which a county must make the dealer payment from thirty days to five days. *See id.* at 1–2. You believe that "the five-day payment provision is in conflict with long-standing Texas law that make[s] it a core duty of the county commissioners court, treasurer, and auditor to review and approve all county expenditures." *Id.* at 2. Thus, you ask:

> (1) Can a county make disbursements to vendors under the state [LIRAP] before such expenditures have been approved by the county's commissioners court, treasurer, and auditor?
>
> (2) If the answer to #1 is "No," is the [TCEQ] prohibited from reimbursing a county for expenditures under LIRAP when the

---

[1]*See* Letter from Honorable Jana Duty, Williamson County Attorney, to Honorable Greg Abbott, Attorney General of Texas (Nov. 8, 2007) (on file with the Opinion Committee, *also available at* http://www.oag.state.tx.us) [hereinafter Request Letter].

required review makes a payment within five business days impossible?

*Id.* at 1.

## I.        Legal Background

Section 382.209 of the Health and Safety Code directs the TCEQ and the Public Safety Commission "by joint rule" to "establish and authorize the commissioners court of a participating county[2] to implement a low-income vehicle repair assistance, retrofit, and accelerated vehicle retirement program." TEX. HEALTH & SAFETY CODE ANN. § 382.209(a) (Vernon Supp. 2007) (footnote added); *see also id.* § 382.202(a) (authorizing the TCEQ to request the Public Safety Commission to establish a vehicle emissions inspection and maintenance program under Transportation Code chapter 548). The statute also directs the TCEQ to provide funding for such a program from available funds. *Id.* § 382.209(b); *see also id.* §§ 382.202(g), .302(c) (authorizing assessment and collection of vehicle emissions-inspection fees that may be used for the LIRAP and other programs). An affected county[3] is not required to participate in the LIRAP. *Id.* § 382.209(h). *But see id.* § 382.218 (providing for required participation by "a county with a population of 650,000 or more that borders the United Mexican States"). Participation, however, is encouraged. *See id.* § 382.216 (authorizing the TCEQ and other named state agencies to encourage counties to implement the voluntary LIRAP, to establish incentives for counties to implement the LIRAP, and to designate a county that implements the program as a "Clean Air County" and give it preference in any federal or state clean air grant program).

Section 382.210, at issue here, provides for "Implementation Guidelines and Requirements" for the LIRAP. *See id.* § 382.210 (caption). In relevant part, Senate Bill 12 added subsection (d), which provides as follows:

> A participating county shall provide an electronic means for distributing vehicle repair or replacement funds once all program criteria have been met with regard to the repair or replacement. The *county shall ensure that funds are transferred to a participating dealer* under this section *not later than five business days after the date the county receives proof of the sale and any required administrative documents* from the participating dealer.

*Id.* § 382.210(d) (Vernon Supp. 2007) (emphasis added); Act of May 28, 2007, 80th Leg., R.S., ch. 262, § 1.04, 2007 Tex. Gen. Laws 407, 408–09 (amending section 382.210).

---

[2]A "participating county" is "an affected county in which the commissioners court by resolution has chosen to implement a low-income vehicle repair assistance, retrofit, and accelerated vehicle retirement program authorized by Section 382.209." TEX. HEALTH & SAFETY CODE ANN. § 382.201(4) (Vernon Supp. 2007).

[3]An "affected county" is "a county with a motor vehicle emissions inspection and maintenance program established under Section 548.301, Transportation Code." *Id.* § 382.201(1).

You generally contend that it is impossible,[4] as a practical matter, for a county to comply with the section 382.210(d) five-day time constraint for transfer of funds. Request Letter, *supra* note 1, at 2–3. You explain that a commissioners court in Texas does not meet every business day; it generally meets in a regular session only monthly and in special sessions only weekly. *Id.* at 3. You also note that a commissioners court may act on a matter only in an open session after giving seventy-two hours prior notice of the matter under the Open Meetings Act. *Id.*[5] Finally, you assert, the county's commissioners court, treasurer, and auditor each have a nondelegable duty to review and approve such an expenditure before it may be paid, and the section 382.210(d) five-day payment requirement, as a practical matter, conflicts with these established duties. *See id.* at 2–3. Your questions specifically relate to this last contention. *See id.* at 1.

## II.    Analysis

### A.    Disbursement Approvals

You first ask whether a county is authorized to disburse funds to participating dealers[6] under LIRAP before such expenditures have been approved by the county's auditor, commissioners court, and treasurer. *See id.* at 1.

---

[4]We do not determine whether county compliance with the legally required reviews and approvals makes payment within the five-day period impossible as a practical matter. We note that the TCEQ "believes there are reasonable alternatives" for complying with the five-day requirement. Letter Brief from Robert Martinez, Director, Environmental Law Division, Texas Commission on Environmental Quality, to Honorable Greg Abbott, Attorney General of Texas, at 2 (Dec. 20, 2007) (on file with the Opinion Committee) [hereinafter TCEQ's Brief]. The TCEQ points out that pursuant to section 382.209(g), Williamson County like some other counties could contract with a private entity or another county to administer the LIRAP to avoid the practical problems that the request letter identifies. *Id.* at 3. Additionally, the TCEQ notes, the county could "create a pre-approval process containing the necessary criteria to ensure payments to participating dealers" within the required time period or "consider adopting a resolution approving the payments provided the criteria are met." *Id.* Alternatively, the TCEQ suggests it has the discretion to interpret the section 382.210(d) language—"no later than five business days after the county receives proof of the sale and any required administrative documents from the participating dealer"—broadly:

> The [TCEQ] could interpret "receives" to mean when the county is in a position to take action on the transaction. Therefore, the county receives proof of sale and any required administrative documents on the day the Commissioners Court convenes to take action on the transaction. Under this interpretation, Williamson County should be able to comply with the five day provision in the statute.

*Id.*

[5]*See* Tex. Att'y Gen. Op. No. JC-0307 (2000) at 8 ("Approval of a claim, invoice, or bill by the commissioners court for payment is an official act of the court that must take place at a meeting held under the [Open Meetings] Act.").

[6]You ask about "disbursements to vendors under the [LIRAP]." Request Letter, *supra* note 1, at 1. In the context of your letter and Health and Safety Code section 382.210, we understand you to ask about dealers participating in the program.

We look at the relevant statutes addressing the duties of the county auditor, the commissioners court, and the county treasurer in disbursing county funds and approving expenditures. Local Government Code section 113.064 provides that in a county with an auditor, "[a] claim, bill, or account may not be allowed or paid until it has been examined and approved by the auditor." TEX. LOC. GOV'T CODE ANN. § 113.064(a) (Vernon 2008). And "[e]ach claim, bill, and account against the county must be filed in sufficient time for the auditor to examine and approve it *before the meeting of the commissioners court*." *Id.* (emphasis added). A county auditor may not "delegate to another legal entity or office [the auditor's] responsibility to examine and approve, if appropriate, a claim." *Crider v. Cox*, 960 S.W.2d 703, 706 (Tex. App.—Tyler 1997, writ denied).

Additionally, section 115.021 of the Local Government Code specifically requires a commissioners court to "audit and settle all accounts against the county and [to] direct the payment of those accounts." TEX. LOC. GOV'T CODE ANN. § 115.021(a) (Vernon 2008). Under this provision, a commissioners court has a nondelegable duty to "audit all claims against the county and to order paid those only which are found to be just and legal demands." *Padgett v. Young County*, 204 S.W. 1046, 1052 (Tex. Civ. App.—Fort Worth 1918, writ dism'd); *accord Navarro County v. Tullos*, 237 S.W. 982, 987 (Tex. Civ. App.—Dallas 1922, writ ref'd); *see also* Tex. Att'y Gen. Op. Nos. JC-0370 (2001) at 3 (concluding that "[a] commissioners court has a nondelegable duty to review county payrolls and to issue warrants"); GA-0383 (2005) at 5–6 (discussing the nature of a commissioners court's duties under section 115.021).

Finally, section 113.041 of the Local Government Code requires a county treasurer to disburse "money belonging to the county" and "pay and apply the money as required by law and *as the commissioners court may require or direct*, not inconsistent with law." TEX. LOC. GOV'T CODE ANN. § 113.041(a) (Vernon 2008) (emphasis added). The treasurer has a ministerial duty to endorse a warrant presented for payment unless the treasurer has doubts about the "legality or propriety of an [instrument] presented . . . for payment." *Id.* § 113.041(d); *see id.* § 113.041(c) (providing that the county treasurer "may not pay money out of the county treasury without a certificate or warrant from an officer who is authorized by law to issue the certificate or warrant"); Tex. Att'y Gen. Op. No. JC-0490 (2002) at 3 (discussing the treasurer's duties). Under section 113.041, a county treasurer may not disburse county funds without approval from the commissioners court. TEX. LOC. GOV'T CODE ANN. § 113.041 (Vernon 2008); Tex. Att'y Gen. Op. No. JC-0370 (2001) at 3.

Texas courts have held that the statutory provisions regarding the commissioners court and the county auditor require them to separately examine and determine whether to approve each claim against county funds. *See Crider*, 960 S.W.2d at 706; *Smith v. McCoy*, 533 S.W.2d 457, 459 (Tex. Civ. App.—Dallas 1976, writ dism'd). "The legislative scheme of control of county funds requires specific approval of the claim by the Auditor before consideration by the Commissioners Court. Likewise, the Auditor may not direct the expenditure of county funds without the County Commissioner's order." *Crider*, 960 S.W.2d at 706 (citing *Smith*, 533 S.W.2d at 459). And the county treasurer may not pay a claim that has not been approved by both the auditor and the commissioners court.

Chapters 113 and 115 of the Local Government Code do not except county payments to the LIRAP participating dealers from the established procedures requiring the county auditor and the commissioners court to separately examine and approve each claim against the county before county funds are disbursed to pay the claim, and requiring the county treasurer to disburse county funds only for payments approved by the commissioners court and the auditor. *See* TEX. LOC. GOV'T CODE ANN. §§ 113.001–.903, 115.001–.901 (Vernon 2008).

Nor does any provision in Health and Safety Code chapter 382 addressing the LIRAP except the participant dealer payments from the established review and approval procedures. We note that section 382.211(a) authorizes a participating county to appoint one or more local advisory panels to advise the county about the LIRAP, "including the identification of a vehicle make or model with intrinsic value as an existing or future collectible." TEX. HEALTH & SAFETY CODE ANN.§ 382.211(a) (Vernon Supp. 2007). Additionally, section 382.211(b) provides that the "commissioners court may delegate all or part of the administrative and financial matters to one or more local advisory panels established under Subsection (a)." *Id.* § 382.211(b). It is unclear what the Legislature contemplated a commissioners court would "delegate" under this section to an "advisory committee" established under section 382.211. *Compare id., with id.* § 382.209(g) (expressly authorizing a participating county to contract with an appropriate entity for services necessary to implement the county's LIRAP). But, whatever section 382.211(b) may contemplate, it does not expressly except payments to participating dealers from a commissioner court's well-established and express duty to review and approve all claims against the county before county funds are disbursed for their payment. And in the absence of clear legislative intent to do so, we do not believe that such an exception may be implied by this office. Moreover, section 382.211(b) does not alter the county auditor's and treasurer's duties with respect to the dealer payments.

Accordingly, in response to your first question, we conclude that a county is not authorized to disburse funds to participating dealers under the LIRAP before such expenditures have been reviewed and approved by the county's auditor, commissioners court, and treasurer as required by Texas law.

## B.    Commission Reimbursement

You next ask whether the TCEQ is prohibited from "reimbursing" a county for its payments to participating dealers under the LIRAP when the required reviews and approvals of county expenditures makes it impossible[7] to make the dealer payment within five business days. *See* Request Letter, *supra* note 1, at 1. You suggest that "[i]n order to reconcile the amended act with existing law . . . the five-day payment requirement . . . must be construed not as a mandatory requirement but as an aspirational goal. The regulations are expressly supposed to be 'guidelines.'" *Id.* at 4. You do not explain the particular legal basis for the view that the TCEQ may be prohibited from reimbursing a county or for the suggested construction of section 382.210 supporting the contrary view.

---

[7]*See supra* note 4.

Before addressing your principal question and argument as we understand them, it is necessary to address two of their premises. First, your question and other statements suggest that the statutory timing requirement is a problem because the TCEQ "reimburses" a county for expenditures the county makes with county funds. *See id.* at 1, 4.

The express statutory scheme requires the TCEQ to distribute available funds to participating counties. *See* TEX. HEALTH & SAFETY CODE ANN. § 382.209(b) (Vernon Supp. 2007). Health and Safety Code section 382.209(b) directs the TCEQ to provide funding for the LIRAP "with available funds collected under Section 382.202, 382.302, or other designated and available funds." *Id.* And section 382.202(g) directs the TCEQ (1) to use part of the fees assessed and collected for vehicle emissions-related inspections to fund the LIRAP, and (2) "to the extent practicable, distribute available funding . . . to participating counties in reasonable proportion to the amount of fees collected . . . in those counties or in the regions in which those counties are located." *Id.* § 382.202(g); *see also id.* §§ 382.202(e), .302(c) (authorizing the TCEQ to assess vehicle emissions-related inspection fees).

The TCEQ informs us that pursuant to the LIRAP, it distributes the available funds to administer the LIRAP to participating counties in proportion to the number of vehicle inspection stickers issued in the prior year. TCEQ's Brief, *supra* note 4, at 4. The TCEQ explains: "[T]hese *funds are distributed up-front* to the counties, who in turn administer the LIRAP. In that respect *Williamson County is not reimbursed for expenditures* under LIRAP, but rather receives [its] proportional share of LIRAP funds in advance to administer the program." *Id.* (emphasis added).

Second, you suggest that the five-day payment requirement is a "guideline" under section 382.210(a). *See* Request Letter, *supra* note 1, at 4. This requirement is not a guideline as we understand you to use the term. *See* TEX. HEALTH & SAFETY CODE ANN. § 382.210(a), (d) (Vernon Supp. 2007). Subsection (a) directs the TCEQ to "adopt guidelines to assist a participating county in implementing a low-income vehicle repair assistance, retrofit, and accelerated vehicle retirement program" and lists certain minimum topics that such guidelines must address. *Id.* § 382.210(a). In contrast, the five-day payment requirement is imposed directly on participating counties by section 382.210(d). *See id.* § 382.210(d). It is subsection (d) that provides: "The county *shall* ensure that funds are transferred to a participating dealer under this section *not later than five business days* after the date the county receives proof of the sale and any required administrative documents from the participating dealer." *Id.* (emphasis added).[8]

We now turn to your question and argument. As we understand it, the legal argument here—for the view that section 382.210(d) does not prohibit TCEQ from reimbursing a county for payments made by the county to participating dealers later than five business days when it is impossible to make the payment within five days—would be that the statute's timing requirement is directory rather than mandatory.

---

[8]TCEQ has adopted a rule that parallels the statutory requirement to transfer funds not later than five days after receipt of the required dealer documentation. *See* 30 TEX. ADMIN. CODE § 114.64(f) (2008).

When a statutory provision requires an act be performed within a certain time without any words restraining the act's performance after that time or stating the consequences of failure to act within the time specified, the timing provision is generally directory. *Helena Chem. Co. v. Wilkins*, 47 S.W.3d 486, 495 (Tex. 2001); *Lewis v. Jacksonville Bldg. & Loan Ass'n*, 540 S.W.2d 307, 310 (Tex. 1976); *Chisholm v. Bewley Mills*, 287 S.W.2d 943, 945 (Tex. 1956); *Plano Parkway Office Condos. v. Bever Props., LLC*, 246 S.W.3d 188, 193 (Tex. App.—Dallas 2007, no pet.). Under this analysis, courts generally consider the language of the statute first, and second, the consequences that result from construing the timing provision as directory or mandatory. *See Helena Chem. Co.*, 47 S.W.3d at 494; *Plano Parkway Office Condos.*, 246 S.W.3d at 193–95; *Tex. Dep't of Pub. Safety v. Dear*, 999 S.W.2d 148, 152 (Tex. App.—Austin 1999, no pet.).

We consider the language of section 382.210(d). This subsection provides that a "county shall ensure that funds are transferred . . . not later than five business days after the date the county receives" the dealer documentation. TEX. HEALTH & SAFETY CODE ANN. § 382.210(d) (Vernon Supp. 2007); *see also Helena Chem. Co.*, 47 S.W.3d at 493 (stating that the term "shall," which is generally recognized as mandatory, creates a duty unless the context in which it is used necessarily requires a different construction). The issue here is the consequences of making the transfer funds beyond the five-day period. Section 382.210(d) does not state any consequences for transferring the funds later than five days after the receipt of the required dealer documentation. *See* TEX. HEALTH & SAFETY CODE ANN. § 382.210(d) (Vernon Supp. 2007). In particular, section 382.210(d) does not expressly prohibit the TCEQ from distributing available funds to a county when the county has transferred the funds after the five-day period. *See id.* Nor do we find another provision in chapter 382 addressing the LIRAP that expressly prohibits the TCEQ from distributing funds in these circumstances. *See id.* §§ 382.202, .210; *cf. State v. $435,000*, 842 S.W.2d 642, 644 (Tex. 1992) (indicating that if the Legislature intends a certain consequence for failure to comply with a prescribed time period, it should provide it expressly). The absence of statutory language prohibiting the distribution of funds upon failure to comply with the five-day payment requirement *suggests* that the "not later than five-days" language is directory. *Cf. Wyeth v. Hall*, 118 S.W.3d 487, 489–90 (Tex. App.—Beaumont 2003, no pet.) (concluding that statutory provision requiring the court of appeals to "render its decision not later than the 120th day" after the appeal's perfection date is directory and not jurisdictional in the absence of a noncompliance penalty or language prohibiting the rendering of a decision after the 120 days).[9] However, this determination suggesting a directory construction does not end our inquiry.

When, as here, a statute is silent about the consequences of noncompliance, we must also consider the consequences, in light of the statutory purpose, that result from opposing constructions. *See Helena Chem. Co.*, 47 S.W.3d at 494; *Plano Parkway Office Condos.*, 246 S.W.3d at 193–95; *Dear*, 999 S.W.2d at 152. *But see Wyeth*, 118 S.W.3d at 489–90 (concluding that timing

---

[9]We note that section 382.002(b) of the Health and Safety Code supports a directory construction of the "not later than five-days" language. Section 382.002(b) provides: "It is intended that this chapter be vigorously enforced and that violations of this chapter . . . result in expeditious initiation of enforcement actions *as provided by this chapter*." TEX. HEALTH & SAFETY CODE ANN. § 382.002(b) (Vernon 2001) (emphasis added).

requirement was directory based only on the absence of additional restricting language and noncompliance penalty).

Construing the section 382.210(d) language as mandatorily prohibiting the TCEQ from distributing available funds to a participating county—when a county may be unable, consistent with Texas law, to make the dealer payment within the five-day period—would appear to unreasonably punish a county for acts not within its control. *Cf.* TEX. GOV'T CODE ANN. § 311.021(2)–(3) (Vernon 2005) (stating that when construing a statute, it is presumed that the Legislature intends an entire statute to be effective and that a just and reasonable result is intended). Additionally, such a construction would discourage county participation and conflict with the stated overall purpose of chapter 382 to control and abate air pollution and emissions of air contaminants. *See* TEX. HEALTH & SAFETY CODE ANN. § 382.002(a) (Vernon 2001) (statutory policy and purpose); *id.* § 382.216 (Vernon Supp. 2007) (encouraging county participation in the LIRAP and other chapter 382 programs). Conversely, construing the section 382.210(d) language as directory would appear to permit a county to participate in the LIRAP and make dealer payments consistent with Texas law governing the review and approval of county disbursements. Construing the statute as directory raises only the possibility that a county might not make the dealer payments as expeditiously as anticipated by the statute, and consequently discourage dealer participation in the LIRAP. However, in the absence of any statutory indication that the Legislature intended to prohibit the TCEQ from distributing available funds to a participating county making dealer payments later than five days, we decline to imply it based solely on the possibility of a county's bad faith or lack of diligence. *Cf. Tex. Dep't of Pub. Safety v. Forsgard*, 108 S.W.3d 344, 348 (Tex. App.—Tyler 2003, no pet.) ("[W]e will not invade the powers of the Legislature by divining new laws that were neither expressed nor intended.").

In sum, the statutory silence regarding county payments to participating dealers after five days and the consequences of opposing constructions favor construing the section 382.210(d) language "not later than five business days" to be directory. Accordingly, we conclude that the TCEQ is not prohibited from distributing available funds to a participating county when the legally required reviews and approvals by the county auditor, county commissioners court, and county treasurer make county payments to LIRAP dealers within five days impractical.

# S U M M A R Y

Chapter 382 of the Health and Safety Code authorizes establishment of a Low-Income Vehicle Repair Assistance, Retrofit, and Accelerated Vehicle Retirement Program ("LIRAP") and directs the Texas Commission on Environmental Quality (the "TCEQ") to distribute available funds to participating counties to administer the program. Section 382.210(d) provides that a participating county "shall ensure that funds are transferred to a participating dealer . . . not later than five business days after the date the county receives" the required dealer documentation. TEX. HEALTH & SAFETY CODE ANN. § 382.210(d) (Vernon Supp. 2007). But a participating county is not authorized to disburse funds to participating dealers under the LIRAP before such expenditures have been reviewed and approved by the county's auditor, commissioners court, and treasurer as required by Texas law. And the TCEQ is not prohibited from distributing available funds to a participating county when the required reviews and approvals by the county commissioner, county auditor, and county treasurer make county payments to LIRAP dealers within five days impractical.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

KENT C. SULLIVAN
First Assistant Attorney General

ANDREW WEBER
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

Sheela Rai
Assistant Attorney General, Opinion Committee